[No. 26416-8-I.   Division One.   December 16, 1991.]

ELVIA GARCIA, *Appellant*, v. REBECCA L. WILSON,
ET AL, *Respondents.*

*Harrison H. deMers* and *deMers & Associates, Inc., P.S.,* for appellant.

*Janet L. Tucker,* for respondents.

FORREST, J. — Elvia Garcia (Garcia) appeals the trial court's grant of summary judgment dismissing her claim for personal injuries against Rebecca and Craig Wilson (the Wilsons) on the basis of collateral estoppel and res judicata. Garcia was injured while a passenger in Teodoro Macias's (Macias) vehicle when it collided with the Wilsons' vehicle, driven by Rebecca Wilson. The accident occurred on December 29, 1988.

On March 19, 1989, Macias filed suit against the Wilsons for property damage to his vehicle. Macias alleged that Ms. Wilson "negligently and tortiously failed to yield the right of way at a stop sign and drove into the path of the plaintiff's vehicle". Garcia was a witness at the trial and was living with Macias at the time of trial.

The trial court entered judgment for the defendants, stating, "I am persuaded that in this case, it was the plaintiff who was traveling at excess speeds and it was the plaintiff who was driving without his lights on." The court indicated that it relied heavily on the testimony of Mr. Wicklander, an eyewitness, who testified that he saw Ms. Wilson stop twice before entering the intersection, and that he did not see any headlights from Macias's vehicle.

On November 6, 1989, 4 months after the Macias trial, Garcia filed suit against both Macias and the Wilsons, praying for compensation for her medical bills, which totaled $1,800, pain and suffering, and loss of wages. Garcia's complaint alleged that Ms. Wilson "failed to stop at a stop sign controlling traffic in the direction in which she was traveling and failed to yield the right-of-way to the vehicle driven by . . . Macias".

■ The Wilsons moved for summary judgment, asserting that Garcia's claim was barred by both collateral estoppel and res judicata. The court granted summary judgment finding both collateral estoppel and res judicata to bar Garcia's claim against the Wilsons.[1] In reviewing the grant of summary judgment this court must engage in the same inquiry as the trial court.[2]

■■ In order for Garcia's claim against the Wilsons to be barred by collateral estoppel, the following four factors must be present: (1) the issue presented must be identical; (2) there must be a final judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party to the former adjudication, or in privity with a party; and (4) no injustice will result by applying collateral estoppel.[3] The Wilsons, as the party asserting collateral estoppel, have the burden of establishing the presence of these factors.[4]

Garcia argues that the first factor is not present because Garcia's claim against the Wilsons is distinct from Macias's claim against the Wilsons. Her contention is without merit. While she is correct that the claim is different, the issue of Ms. Wilson's negligence is the same.[5] Both Macias's and

---

[1]We note that Garcia's claim against Macias remains intact.

[2]*Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[3]*McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987).

[4]*McDaniels*, 108 Wn.2d at 303.

[5]This is the difference between collateral estoppel and res judicata. Res judicata is applicable when the same claim is brought in a subsequent action. Collateral estoppel is applicable when the claim is different but some of the

Garcia's complaints allege that Ms. Wilson was negligent in entering the intersection.

Garcia contends that by finding in favor of the Wilsons the Macias v. Wilson[6] trial court did not necessarily find that Ms. Wilson was without fault. Rather, Garcia argues that the Macias v. Wilson trial court could have concluded that Macias's and the Wilsons' damage simply offset each other. Neither the pleadings nor the law supports such a conclusion. The Wilsons did not counterclaim against Macias. Thus, there was nothing to offset Macias's claim of damage. Under RCW 4.22.005,[7] if the trial court had found Ms. Wilson negligent to any degree, the Wilsons would have been responsible for some portion of Macias's damages. Moreover, the Macias v. Wilson trial court's findings of fact support the conclusion that *no* negligence was found on the part of Ms. Wilson. We conclude that the issue presented here as to Ms. Wilson's negligence is identical to the issue presented in Macias's action.[8]

It is conceded that there was a final judgment on the merits in the Macias v. Wilson lawsuit, satisfying the second factor. In regard to the third factor, Garcia argued to the trial court at summary judgment that collateral estoppel could not be applied to her in that she was only a witness to the former adjudication and not in privity with Macias.

---

same issues are presented. *See* 15 L. Orland & K. Tegland, Wash. Prac., *Trial Practice* § 359, at 6-17 (4th ed. 1986). *See also Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983).

[6]Federal Way District Court cause 890397 (filed Mar. 19, 1989).

[7]RCW 4.22.005 reads, in part:
"In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant *diminishes proportionately* the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, *but does not bar recovery.*" (Italics ours.)

[8]We also note that the type of damages sought is irrelevant to the inquiry of whether the issue as to the basis of liability is identical. Thus, the fact that Garcia's action is for personal injuries rather than property damage has no bearing.

That position is incorrect in view of the exception to the privity requirement announced in *Hackler v. Hackler*.[9] In *Hackler* a witness in the former adjudication, which was a dissolution proceeding, testified to deeding his house to his son without mentioning that the house was eventually deeded back to him. The witness subsequently brought suit to quiet title to the house in him. The court held that the witness's action was barred by collateral estoppel. The court reasoned that an exception to the privity requirement existed because the claimant was a witness in the former adjudication, was "fully acquainted with its character and object", and was "interested in its results". *Hackler v. Hackler*, 37 Wn. App. 791, 795, 683 P.2d 241, *review denied*, 102 Wn.2d 1021 (1984). We recognize that the facts of *Hackler* are clearly distinguishable from the case at bar, but *Hackler* squarely holds that under proper circumstances collateral estoppel may be applied to a nonparty. The *Hackler* court relied in part on *Bacon v. Gardner*,[10] which precluded a former witness on the basis that the witness had full knowledge of the prior action and the opportunity to intervene.[11]

*Hackler* and *Bacon* illustrate that Washington recognizes what has been termed the virtual representation doctrine.[12] This doctrine allows collateral estoppel to be used against a nonparty when the former adjudication involved a party with substantial identity of interests with the nonparty. Of course, such preclusion must be applied cautiously in order to insure that the nonparty is not unjustly deprived of her day in court. Therefore, cases which have utilized the doc-

---

[9]37 Wn. App. 791, 683 P.2d 241, *review denied*, 102 Wn.2d 1021 (1984).

[10]38 Wn.2d 299, 312-13, 229 P.2d 523 (1951).

[11]*See also Robinson v. Hamed*, 62 Wn. App. 92, 813 P.2d 171 (1991) (holding a union member to be collaterally estopped by the ruling in an arbitration proceeding in which the union, not the member, was the party).

[12]*See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice* § 4457, at 494-502 (1981) (hereinafter Wright & Miller). *See also Aerojet-General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.), *cert. denied*, 423 U.S. 908, 46 L. Ed. 2d 137, 96 S. Ct. 210 (1975).

trine have developed a number of factors which, in essence, insure that the nonparty has had a vicarious day in court.[13]

The primary factor to be considered is whether the nonparty in some way participated in the former adjudication, for instance as a witness.[14] The issue must have been fully and fairly litigated at the former adjudication.[15] That the evidence and testimony will be identical to that presented in the former adjudication is another important factor.[16] Finally, there must be some sense that the separation of the suits was the product of some manipulation or tactical maneuvering, such as when the nonparty knowingly declined the opportunity to intervene but presents no valid reason for doing so.[17]

Here, a sufficient number of these factors are present to insure fair application of the virtual representation doctrine and to satisfy the fourth factor, that injustice will not result from applying the doctrine. Garcia was involved in the accident, was living with Macias at the time of the suit, and was a witness in the first action, indicating that she was fully aware of the character and issues of the first suit. That suit was fully and fairly litigated, resulting in a defense verdict. Moreover, Garcia concedes that the evidence and witnesses that she would present are the same as were presented in the first action. Thus, nothing would be accomplished by allowing the second action.[18] Finally, Gar-

---

[13]Note, *Collateral Estoppel of Nonparties*, 87 Harv. L. Rev. 1485, 1499-1500 (1974).

[14]*Cauefield v. Fidelity & Cas. Co.*, 378 F.2d 876, 877 (5th Cir.), *cert. denied*, 389 U.S. 1009, 19 L. Ed. 2d 606, 88 S. Ct. 571 (1967); *Hackler v. Hackler*, 37 Wn. App. 791, 795, 683 P.2d 241, *review denied*, 102 Wn.2d 1021 (1984); Wright & Miller, at 498; Note, *Collateral Estoppel*, at 1500.

[15]Note, *Collateral Estoppel*, at 1500.

[16]*Cauefield*, 378 F.2d at 878.

[17]*Bacon*, 38 Wn.2d at 313; *Hackler*, 37 Wn. App. at 795; Wright & Miller, at 498-99.

[18]*See Cauefield*, 378 F.2d at 879, stating, "absolutely nothing would be gained were appellants permitted to pursue their action in the federal courts."

cia began seeing a doctor the day after Macias filed his complaint, leaving no other conclusion but that she was interested in the results of the trial and could have intervened in Macias's action. Indeed, she filed her own suit 8 months after Macias filed his and just 4 months after the Macias v. Wilson trial.

In any given case there may be good reasons why a party may choose not to intervene in an action even though the right to intervene exists. Examples of such considerations include that the party's injuries are not stabilized, that association with the other plaintiff may be prejudicial, that there are differences in trial strategy, that different witnesses are to be called, or that the party wants an independent attorney of her own choosing. Facts such as these, presented to the trial court, might make it unfair to apply collateral estoppel. However, at summary judgment Garcia took the position that as a matter of law collateral estoppel could not be applied to her since she had been a witness, not a party, in the first action. *Hackler* holds to the contrary. Garcia failed to demonstrate to the trial court any prejudice that would have resulted from a decision to intervene. The decision appears purely tactical. If Macias had won, Garcia would have gained a tactical advantage in pursuing her own claim; since Macias lost she must accept the consequences. On appeal it is suggested that her injuries were not ready to be submitted to the trier of fact. A doctor's affidavit to that fact at summary judgment might well have resulted in a different determination. The argument comes too late on appeal.

The Wilsons have established a number of the factors which insure fair application of collateral estoppel against Garcia; Garcia has failed to present any reasons why that application would be unfair.[19] We emphasize that application of collateral estoppel to a nonparty necessarily depends on the particular facts presented. We hold that on the facts

---

[19]*See PUD 1 v. Tombari Family Ltd. Partnership*, 117 Wn.2d 803, 819 P.2d 369 (1991) (holding that the party asserting that application of collateral estoppel would be unjust has the burden of showing injustice).

presented in the case at bar, collateral estoppel was correctly applied.[20]

Affirmed.

COLEMAN and KENNEDY, JJ., concur.

---

[20]*Hackler*'s virtual representation doctrine is clearly limited to collateral estoppel. In order for an action to be barred by res judicata there must be identity of persons and parties. The trial court erred in ruling that Garcia's action was barred by res judicata.