251 P.3d 908 (2011)
DIVERSIFIED WOOD RECYCLING, INC., a Washington corporation, Respondent,
v.
Harold JOHNSON, also known as Hal Johnson and Jane Doe Johnson, husband and wife, Defendants, and
Kuleana, LLC, a Washington limited liability company and Harold E. Johnson, a single man, Appellants.
No. 65264-8-I.
Court of Appeals of Washington, Division 1.
May 16, 2011.
*910 George M. Ahrend, Ahrend Law Firm PLLC, Moses Lake, WA, for Appellants.
Maris Baltins, Law Offices of Maris Baltins, P.S., Spokane, WA, for Respondent.
John Henry Guin, Law Office of John H. Guin, PLLC, Spokane, WA, for Defendant/Other Party.
*911 BECKER, J.
¶ 1 This is the second of two linked opinions concerning a judgment of foreclosure on property subject to a construction lien. In the first case, we affirmed the judgment of foreclosure. The appellant was Harold Johnson. We concluded that the lien claimant, Diversified Wood Recycling Inc., satisfied the statutory prerequisites for maintaining a foreclosure action. Diversified Wood Recycling v. Johnson, ___ Wash.App. ___, 251 P.3d 293 (2011).
¶ 2 In this case, the appellants are Harold Johnson's father (also named Harold Johnson) and a limited liability company, Kuleana LLC. Appellants argue they should have been allowed to intervene in the foreclosure action in order to seek vacation of the judgment. They contend they are owners of the property and that they were not joined as parties to the action, hence the judgment is void.
¶ 3 Because appellants did not attempt to intervene until after judgment was entered, the denial of their motion to intervene was justified by its untimeliness. In addition, the relief they soughtvacation of the judgment as voidwas not available. We do not decide whether they were owners. We hold that the nonjoinder of an owner does not make a foreclosure judgment void; it simply means that the owner's interest is unaffected. The order of the trial court is affirmed.

BACKGROUND
¶ 4 The foreclosure action is discussed at length in the linked opinion, No. 65263-0-I. Briefly, respondent Diversified was hired by a man named Harold Johnson to clean up tree stumps and slash on land in Spokane County. This man held himself out as the property owner with an address in Puyallup. Diversified performed the work and improved the property. Diversified sent invoices totaling $10,680 to Harold Johnson at the Puyallup address. Diversified received no payment for its work. Diversified obtained county records and a "property profile" from a title company, both of which indicated the owner of the parcel of property on which the work was done was Harold Johnson at the Puyallup address. Diversified recorded a valid lien, initiated a foreclosure action naming Harold Johnson as the defendant, and made service upon Harold Johnson at the Puyallup address.
¶ 5 There are two Harold Johnsons concerned in this matter, father and son. The younger Harold Johnson (Junior) answered the complaint. Junior testified that he was not an owner but merely a contractor hired to develop property which, he said, had been purchased in 2006 by the older Harold Johnson (Senior). Junior argued that the action had to be dismissed, in part because joinder of the owner was an essential statutory prerequisite for maintaining a foreclosure action. Senior testified as a witness in the defense case. After a two day bench trial, the court entered judgment for Diversified and ordered foreclosure of the lien.
¶ 6 After the judgment was entered on June 13, 2008, Senior and Kuleana filed a motion to intervene for the purpose of moving to vacate the judgment and decree of foreclosure.[1] With it, they filed a motion to vacate pursuant to CR 60(b)(5) and (11).[2] The trial court denied the motion to intervene.[3] Senior and Kuleana assign error to this ruling.

UNTIMELINESS
¶ 7 "Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." CR 24 (intervention of right). "Where a person seeks to intervene after judgment, the court should allow intervention only upon a strong showing after considering all circumstances, including prior notice, prejudice to the other *912 parties, and reasons for and length of the delay." Kreidler v. Eikenberry, 111 Wash.2d 828, 832-33, 766 P.2d 438 (1989). "Abuse of discretion is the proper standard of review for a trial court's determination of timeliness." Kreidler, 111 Wash.2d at 832, 766 P.2d 438 (trial court did not err in denying postjudgment intervention).
¶ 8 The interests asserted by appellants were adequately represented by Junior. Junior, Senior, and Kuleana all desired to have the lien foreclosure action dismissed with prejudice. Senior and Kuleana argue that the owner was not served as required by RCW 60.04.141 and was not joined as required by RCW 60.04.171, and as a result, the court lacked both subject matter jurisdiction and statutory authority to proceed with the action. Junior made the same argument, without success.
¶ 9 Appellants do not show how they, by relitigating these issues, could drive the foreclosure action to a different outcome. Appellants suggest that Diversified was at fault for failing to ascertain their alleged ownership interests in the liened property. They presented a declaration from attorney Richard Campbell who has expertise in representing construction companies, to the effect that before filing a lien foreclosure lawsuit one should purchase a "litigation guarantee" or comprehensive title report that will serve as an insurance policy to ensure that all persons and entities with an interest in the property are named in the lawsuit.[4] Campbell's declaration is not useful because he does not address the facts of this case. We are not told what information a litigation guarantee would have turned up different from what Diversified learned through the inquiries it did make.
¶ 10 Senior appears to contend that the result of the trial was erroneous in that the property subjected to the lien included, according to Senior, not only the property upon which Diversified performed its work but also adjacent property that Senior claims to own.
¶ 11 The trial court found that in 2006, Harold Johnson purchased the property that is the subject of the action from a Michael McGarvey and conveyed it in 2007 to Kuleana. The legal description in the conveyance from "Harold Johnson" to Kuleana differs from the legal description in the McGarvey deed. In the trial and appeal of the foreclosure action, no one focused on the legal descriptions. Junior took the position that the deed to Kuleana conveyed all of Harold Johnson's interest in the subject property such that Kuleana had become the record owner at the time Diversified filed suit. Ten days before trial, Senior supported that position in an affidavit in support of Junior's motion to dismiss:
2. On March 31, 2006 I purchased the property that is the subject of this Claim of Lien action, River Ranch, from Mr. Michael McGarvey, as personal representative for the Estate of Ruby R. McGarvey, which was conveyed to me by statutory warranty deed. The statutory warranty deed was recorded in Spokane County on March 31, 2006 under recording number 5361829. A true and correct copy of the deed is attached hereto as Exhibit A and incorporated herein by this reference.
3. When I purchased River Ranch on March 31, 2006, I was the sole owner of the property. I continued to be the only owner of River Ranch until February 2, 2007, when River Ranch was subsequently conveyed to Kuleana, LLC. At no time from the original conveyance on March 31, 2006 through the date of his Affidavit has my son, Hal Johnson ever been an owner or maintained any interest in River Ranch. Hal Johnson was never a party to the original conveyance from Mr. McGarvey or the subsequent conveyance to Kuleana, LLC.
4. Kuleana, LLC was formed as a Washington Limited Liability Company on March 27, 2006 under UBI Number XXX-XXX-XXX. *913 Kuleana, LLC was established for the purpose of conveying the River Ranch property, and where applicable, other real estate property, that I intended to develop. A true and correct copy of the Certificate of Formation is attached hereto as Exhibit B and incorporated herein by this reference.
5. On February 2, 2007, I conveyed River Ranch to Kuleana, LLC by statutory warranty deed, which was recorded in Spokane County under recording number 5493141. A true and correct copy of the deed is attached hereto as Exhibit C and incorporated herein by this reference.[[5]]
¶ 12 Senior now takes a different position. He no longer asserts that he conveyed to Kuleana all of the property that is subject to the lien. In a declaration in support of his motions to intervene and vacate, Senior states that the property he purchased from McGarvey in March 2006 consisted of several hundred acres. He says he immediately began a planned unit development on a hundred acres of the property. He says that the acreage he conveyed to Kuleana, a limited liability company that he wholly owns, was only the acreage he intended for development. "Although it is my understanding that the plaintiff performed his work only on the portion of the property platted for the [planned unit development], the legal description provided by his attorney for the lien appears instead to describe other parcels of the property owned by me."[6] His appellate brief repeats the bare assertion that the property described by the claim of lien was not only the planned unit development property owned by Kuleana but also adjacent property owned by Senior.[7] Senior's motion is unaccompanied by a map or expert testimony illuminating the various legal descriptions.
¶ 13 Had Senior's contention been raised and documented at the foreclosure trial, perhaps the lien could have been amended and confined to a smaller portion of the property. See RCW 60.04.091(2). We say "perhaps" because, even now, appellants do not elaborate upon the alleged problem with the legal descriptions. It is not clear exactly how much property they each claim to own or where such property is located in relationship to the property that was described in the claim of lien and that was foreclosed on by the judgment. Still, the motion to intervene might have been granted based on Senior's bare assertion if appellants had not waited until after judgment to make it. They do not make a strong showing to justify being permitted to intervene postjudgment.
¶ 14 As to notice, Senior's declaration claims he had little information about the dispute or the lawsuit before it came to trial, "other than that it was a small matter." He states that "Hal [referring to his son] had been told and believed that the lien was invalid; and Hal expected to settle the dispute."[8] The record shows that Senior visited the property while Diversified's crew was working on it and that Senior was aware Diversified had been hired to clean up slash. The record also shows that Senior was personally aware of the suit before the trial began. He submitted his first declaration 10 days before trial. Diversified took his deposition shortly before trial. Furthermore, Kuleana, the company he claims he wholly owned, had notice of the lawsuit by virtue of service upon Kuleana's registered agent, Harold Johnson. At trial, Senior testified for the defense and demonstrated his awareness that the lawsuit was aimed at property in which he claimed an interest:
Q. Are you aware of the circumstance of why we are here today?
A. Yes.
Q. Okay. And do you have any interest in the outcome of this case?
A. Do I what?
Q. Do you have any interest in the outcome of this case?
A. Yes.
Q. Why is that?
A. There's a lien on my property.

*914 Q. Are you the owner of the River Ranch property?
A. Yes, I am.[[9]]
¶ 15 Under these circumstances, Senior cannot be heard to say he lacked notice. As to prejudice, intervention would further delay Diversified in getting paid for its work. As to reasons for the delay, Senior's declaration does not explain why he waited until after judgment was entered to claim ownership or why he did not analyze the various legal descriptions until after the trial was over. He declared before trial that he had conveyed to Kuleana the entire acreage subject to the lien. After judgment, he declared he had conveyed only a portion of it. He fails to explain why he did not come forward with the second declaration until after the judgment.
¶ 16 In summary, the untimeliness of the motion to intervene is sufficient to justify the ruling of the trial court denying the motion.

LACK OF JOINDER
¶ 17 Appellants claim, however, that the trial court denied intervention without considering the constitutional and jurisdictional issues they wanted to raise as a basis for vacating the foreclosure judgment.
¶ 18 The court heard argument on the motion to intervene and the motion to vacate at a hearing on September 5, 2008, accepting appellants' representation that the motions were related. Counsel argued that the judgment "needs to be vacated, either in this action or in a collateral attack."[10]
The purpose of the motion to intervene is because we would prefer to resolve the issue here. We can only resolve the issue here if we are parties. If we can't be parties to this proceeding, we will have to attack it collaterally.[[11]]
The court considered both motions together. We will not suppose that the trial court failed to consider the arguments for vacating the judgment in connection with ruling on the motion to intervene.
¶ 19 Appellants argue that procedural errors by a lien claimant cannot justify forcing a nonparty owner to intervene in order to protect his property. They summarize their argument for vacating the judgment as follows:
This appeal of what is nominally a ruling on intervention is sui generis, presenting, as it does, a situation in which the persons whose property a judgment actually encumbers and against whom the case should have been brought have been relegated to requesting leave to intervene. It implicates constitutional rights to due process that this Court can and must consider.[[12]]
Citing the statutory eight month deadline for filing suit in RCW 60.04.141, appellants ask, "How could it possibly be the case that Diversified is entitled to statutory foreclosure by a judgment entered fifteen months after a claim of lien, against which the owner has no opportunity to defend?"[13]
¶ 20 To respond to this argument, we turn to the statutory scheme governing construction liens.[14] A lien claim may be filed for recording under RCW 60.04.091. It is the filing of a lien claim that actually encumbers the property made subject to the lien. Such encumbrance has not been held to violate the owner's due process rights even though the statute does not insist that the claimant be able to identify the name of the owner or even the reputed owner. See RCW 60.04.091(e). The encumbrance created by a lien has a relatively short life unless the claimant starts a foreclosure action. The claimant must file suit within 8 months of *915 recording the lien and make service on the owner within 90 days thereafter, or else the lien will expire. RCW 60.04.141.
¶ 21 Actions to foreclose construction liens are "quasi in rem proceedings, i.e., they determine the interests of certain defendants in a thing in contrast to a proceeding in rem, which determines the interests of all persons in the thing." Hasek v. Terrene Excavators, Inc., 44 Wash.App. 554, 557, 723 P.2d 1153 (1986) (emphasis omitted); see also Freeman v. Navarre, 47 Wash.2d 760, 776, 289 P.2d 1015 (1955). The res is the liened property. Joinder of particular defendants is not a prerequisite for maintaining the action. Rather, under RCW 60.04.141, the sine qua non for keeping the lien alive and obtaining a valid judgment of foreclosure is making service on the owner.[15]
¶ 22 Evidence at trial indicated that the record owner of the liened property was either Harold Johnson or Kuleana. Harold Johnson was Kuleana's registered agent. Given the evidence and the state of the public record, we concluded in Junior's appeal that Diversified could not reasonably be expected to distinguish between the two Harold Johnsons for purposes of service under RCW 60.04.141.[16] Whether the owner was Harold Johnson or Kuleana, Diversified made service upon both of them by serving a Harold Johnson. Therefore, if appellants Harold Johnson and Kuleana perceived they had ownership interests in the property subjected to the lien, they had an opportunity to be heard.
¶ 23 Appellants allege RCW 60.04.171 provides a basis for vacation on grounds of lack of subject matter jurisdiction. Under RCW 60.04.171, a recorded claim of lien may be foreclosed and enforced by a civil action "in the manner prescribed for the judicial foreclosure of a mortgage." This section also states that "the owner shall be joined as a party." RCW 60.04.171. Appellants erroneously infer that a foreclosure action in which the owner has not been joined as a party must be dismissed as void. We addressed the same argument in Junior's appeal. The consequence of nonjoinder of the owner or any other person who has a prior recorded interest in the property is not lack of jurisdiction. Nonjoinder of the owner does not mean the lien expires or that the court lacks statutory authority to proceed. The consequence is that the interest of a person not joined may not be foreclosed or otherwise affected. RCW 60.04.171.[17] This is consistent with what happens in a judicial foreclosure of a mortgage:
Considering first the question of joinder, we recognize the purpose of the sale under the decree of foreclosure is to pass to a purchaser the entire title to the property, both that of the mortgagor and of the mortgagee, as it was at the time the mortgage was given. Consequently, joinder of any person having an interest in the property is essential in that, if not joined, his interest will not be affected by the foreclosure. Clearly, due process requires a "day in court" before property interests can be extinguished. To that extent Portland Timber, the vendee of a deed from the mortgagor Martinson, valid between the parties, is a necessary party. That does not mean, however, that failure to join such a person nullifies the action. It only means such a person's interest is unaffected.
Valentine v. Portland Timber & Land Holding Co., 15 Wash.App. 124, 128, 547 P.2d 912 (citation omitted), cited in 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES-DEBTORS' RELIEF § 3.2 at 138 n. 7, review denied, 87 Wash.2d 1015, 1976 WL 50529 (1976); see also 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 19.2, at 375 n. 7.
¶ 24 If an owner who has been served but not joined does nothing, the property will be sold at auction to satisfy the lien. Thus, a timely motion to intervene is advisable. An *916 owner who does not intervene before judgment and does not present a good reason for being allowed to intervene postjudgment will generally be left to devise a collateral attack upon the judgment. That is what happened here.
¶ 25 The judgment entered by the trial court properly reflects the law discussed above. The judgment decrees "that after the execution and delivery of the Sheriff's deed after foreclosure, defendant and all persons claiming under the defendant, and all persons claiming interest in the real property junior to that of the Claim of Lien foreclosed on in this Judgment" shall be forever barred from asserting interests in the real property.[18] There is no language precisely delineating, by person, the interests in the liened property that are foreclosed by the judgment.
¶ 26 The judgment stands on solid ground regardless of whether appellants were owners. We are not required to determine in this appeal whether they actually were owners and consequently we make no such determination.
¶ 27 Diversified claims that the judgment binds Senior and Kuleana, even if they were nonparties, by means of a doctrine known as "virtual representation," citing Irwin v. Mascott, 370 F.3d 924, 930 (9th Cir.2004). There are certain categories of exceptions to the general rule against nonparty preclusion that have come to be known as virtual representation. But Irwin is among cases using a test for virtual representation recently disapproved by the United States Supreme Court as too elastic. Taylor v. Sturgell, 553 U.S. 880, 891 n. 3, 893-95, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).
¶ 28 In Washington, virtual representation is recognized as a variation on collateral estoppel. Garcia v. Wilson, 63 Wash.App. 516, 520, 820 P.2d 964 (1991). Collateral estoppel can apply to a nonparty where the nonparty was a witness in the former adjudication, was fully acquainted with its character and object, and was interested in its results. Garcia, 63 Wash.App. at 520, 820 P.2d 964, discussing Hackler v. Hackler, 37 Wash.App. 791, 795, 683 P.2d 241, review denied, 102 Wash.2d 1021 (1984).
Of course, such preclusion must be applied cautiously in order to insure that the nonparty is not unjustly deprived of her day in court. Therefore, cases which have utilized the doctrine have developed a number of factors which, in essence, insure that the nonparty has had a vicarious day in court.
The primary factor to be considered is whether the nonparty in some way participated in the former adjudication, for instance as a witness. The issue must have been fully and fairly litigated at the former adjudication. That the evidence and testimony will be identical to that presented in the former adjudication is another important factor. Finally, there must be some sense that the separation of the suits was the product of some manipulation or tactical maneuvering, such as when the nonparty knowingly declined the opportunity to intervene but presents no valid reason for doing so.
Garcia, 63 Wash.App. at 520-21, 820 P.2d 964 (footnotes omitted). Garcia is solidly rooted in a long series of Washington cases. See Hackler; Bacon v. Gardner, 38 Wash.2d 299, 312-13, 229 P.2d 523 (1951); Youngquist v. Thomas, 196 Wash. 444, 83 P.2d 337, 87 P.2d 1120 (1938); Briggs v. Madison, 195 Wash. 612, 82 P.2d 113 (1938); Howard v. Mortensen, 144 Wash. 661, 258 P. 853 (1927); Am. Bonding Co. v. Loeb, 47 Wash. 447, 92 P. 282 (1907); Shoemake v. Finlayson, 22 Wash. 12, 60 P. 50 (1900).
¶ 29 Diversified asserts and appellants deny that Junior was the virtual representative of Senior and Kuleana in the foreclosure action. For several reasons, we do not reach the issue. Typically the doctrine of virtual representation is applied where there are successive suits; so far, we have seen only the first suit. Resort to the virtual representation doctrine was unnecessary in the trial, and it has likewise been unnecessary to our disposition of the assignments of error in either of the two linked appeals. Also, application of the doctrine involves a host of factual *917 issues. The trial court did not enter findings or conclusions pertaining to virtual representation, so we have no decision to review.
¶ 30 We do not rule out the possibility that in a collateral attack by Senior and Kuleana, a court might find their claims precluded under the Garcia line of cases. We conclude only that appellants have not raised constitutional issues or jurisdictional defects that would compel granting the motion to intervene.

ATTORNEY FEES
¶ 31 Diversified requests an award of attorney fees and costs incurred in this appeal.
The court may allow the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for recording the claim of lien, costs of title report, bond costs, and attorneys' fees and necessary expenses incurred by the attorney in the superior court, court of appeals, supreme court, or arbitration, as the court or arbitrator deems reasonable.
RCW 60.04.181(3).
¶ 32 Appellants contend fees cannot be awarded against them under this statute unless they are recognized as party intervenors in the underlying lien foreclosure action. We disagree. Appellants attempted to intervene in the action for the purpose of vacating the judgment. By defeating their motion, Diversified has prevailed in the action. The appellants have added significantly to the time and expense Diversified has had to incur to maintain its lien. An award to Diversified for fees incurred on appeal is appropriate.

MOTION TO SUPPLEMENT RECORD
¶ 33 In this court, Diversified moved to supplement the appellate record with materials filed in the trial court in connection with an attorney's lien filed against Junior by his trial counsel. Diversified made the identical motion in the linked case of Junior's appeal. We deny the motion to supplement for the same reason stated in that case: the materials are not necessary to reach a decision on the merits.
¶ 34 Appellants have moved for sanctions against counsel for Diversified for submitting an allegedly false statement by counsel for Diversified in support of the motion to supplement. The statement in question is argumentative rather than demonstrably false. The motion for sanctions is denied.
¶ 35 The order denying the motion to intervene and vacate is affirmed.
¶ 36 Attorney fees and costs are awarded to Diversified.
WE CONCUR: LAU and SCHINDLER, JJ.
NOTES
[1] Clerk's Papers at 485-86.
[2] Clerk's Papers at 501-02.
[3] Clerk's Papers at 787-88.
[4] Clerk's Papers at 783-85. A leading commentator on creditors' remedies confirms that it is good practice to obtain a litigation guarantee. "As a practical matter, the only way a lender can determine the parties with recorded interests is to obtain a title report. For judicial foreclosure purposes, a form of report called a litigation guarantee is used." 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES-DEBTORS' RELIEF § 3.2 at 137.
[5] Clerk's Papers at 250-51.
[6] Clerk's Papers at 506 (affidavit dated July 15, 2008).
[7] Brief of Appellant at 3.
[8] Clerk's Papers at 506.
[9] Report of Proceedings at 201 (Trial, April 15, 2008).
[10] Report of Proceedings at 2 (Sept. 5, 2008).
[11] Report of Proceedings at 3 (Sept. 5, 2008).
[12] Brief of Appellant at 8.
[13] Brief of Appellant at 12.
[14] In 1991, Washington's comprehensive mechanics' and materialmen's lien statute was repealed and replaced with a revised and recodified law. LAWS OF 1991, ch. 281; ch. RCWA 60.04. "The title `mechanics' and materialmen's lien' is still used in the RCWA, but the liens are called by the more inclusive title, `construction liens,' in this subchapter." 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES-DEBTORS' RELIEF § 4.51 at 347.
[15] Diversified Wood Recycling, ___ Wash.App. at ___, 251 P.3d 293.
[16] Diversified Wood Recycling, ___ Wash.App. at ___, 251 P.3d 293.
[17] Diversified Wood Recycling, ___ Wash.App. at ___-___, 251 P.3d 293.
[18] Clerk's Papers at 825.