IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Domestic Violence | ) | |
| Protection Order for | ) | No. 39486-7-III |
| | ) | |
| H.P. | ) | UNPUBLISHED OPINION |
| | ) | |

COONEY, J. — H.P. petitioned for, and was subsequently granted, a domestic violence restraining order (DVPO) that protected him from his mother. Prior to H.P. filing his petition for a DVPO, H.P.'s father (Father) unsuccessfully petitioned to modify the parenting plan between he and H.P.'s mother (Mother). The DVPO and the petition to modify the parenting plan were filed in different counties and both alleged that Mother had committed acts of domestic violence against H.P. Father's petition to modify the parenting plan was denied and, shortly thereafter, H.P.'s petition for a DVPO was granted.

Mother appeals contending that collateral estoppel bars H.P. from relitigating the issue of whether she committed acts of domestic violence against him. We agree with Mother and reverse.

BACKGROUND

Mother and Father were married in 2006 and divorced sometime between 2016 and 2017. Shortly before their marriage, the couple begot one child, H.P. H.P. has been

diagnosed with mental disorders and has struggled with behavioral, social, and academic issues. Following his parent's divorce, a parenting plan was entered that designated Mother the primary parent. Father was granted visits with H.P. every other weekend and half of the holidays.

WALLA WALLA COUNTY PROCEEDINGS

On June 28, 2022, Father petitioned the Walla Walla County Superior Court for an immediate restraining order protecting he and H.P. from Mother. Simultaneously, Father petitioned to modify the parenting plan, claiming H.P.'s "current living situation is harmful to [H.P.'s] physical, mental, or emotional health." Clerk's Papers (CP) at 457. Father's declaration, which was attached to the petition to modify the parenting plan, alleged Mother had verbally and physically abused H.P., and that H.P. was refusing to return to Mother's home. Father's declaration also contained 29 pages of text messages between Mother and H.P.

Mother opposed the petition to modify the parenting plan. Both Father and Mother filed their own declarations, along with declarations from others that supported their respective positions. Both Mother and Father also brought motions to strike certain declarations or portions thereof. Attached as an exhibit to one of the declarations was Mother's declaration from the separate Benton County DVPO matter.

On August 15, the court in Walla Walla County denied Father's petition to modify the parenting plan finding there was "no substantial change of circumstances" since the

2

entry of the original parenting plan. CP at 609. The court awarded Mother attorney fees

for "having to respond to the Petition which was without basis, and brought in bad faith."

CP at 611. The hearing transcripts from the Walla Walla County proceedings were not

made part of the record.

BENTON COUNTY PROCEEDINGS

On July 15, while the Walla Walla County matter was pending, H.P. petitioned the

Benton County Superior Court for a DVPO against Mother. The Benton County court

granted H.P. a temporary protection order. In support of his petition for the DVPO, H.P.

filed a declaration and attached the same 29 pages of text messages that were attached to

Father's declaration in the Walla Walla County matter.

On July 26, Mother filed a declaration in the Benton County matter that

mistakenly contained handwritten comments in the margins, presumably from her

attorney. This declaration was filed in the Walla Walla County matter as an exhibit to

H.P.'s counsel's declaration. Mother later filed an amended declaration in the Benton

County matter that did not contain the typewritten comments in the margins. The

amended declaration was nearly identical to the declaration she filed in the Walla Walla

County matter.

Monesa Grant, a witness for Mother, also filed identical declarations in both the

Benton County and the Walla Walla County matters. H.P. and Mother also filed multiple

declarations in the Benton County matter and attached the same declarations filed in the Walla Walla County matter, as well as the Walla Walla County court's orders.

BENTON COUNTY HEARING AND MOTION FOR REVISION

On September 7, a Benton County commissioner held a hearing on H.P.'s petition for a DVPO. At the hearing, Mother asserted that H.P. should be precluded from rearguing that she had committed acts of domestic violence against him because the court in Walla Walla County had denied Father's petition to modify the parenting plan that was based on the same allegations. The commissioner asked if Mother had filed a memorandum in support of her argument, to which Mother's counsel replied that she had not. The commissioner declined to consider Mother's issue-preclusion argument and proceeded to the merits.

The commissioner ultimately granted the DVPO, stating, "[T]his is a very close call" but specified that "what swayed the Court is the inconsistency in the Declarations between [Mother]'s Declaration filed on July 26, 2022 and the crafted up or cleaned up or edited or polished version thereafter." CP at 235. The commissioner stated, "That undermines the credibility of the declarant somewhat." *Id*. The commissioner therefore made a "finding of domestic violence under coercive control." *Id*.

Thereafter, Mother filed a motion to revise the commissioner's ruling. In her memorandum in support of the motion to revise, Mother argued that H.P. should be

precluded from relitigating the issue of domestic violence based on the Walla Walla County court's previous findings.

Mother's motion to revise was denied without a hearing. In its order, the Benton County court noted that "on August 12, 2022, [Benton County Superior Court] Judge Ruff offered to allow [H.P.] the opportunity to change venue to Walla Walla County" to which "[H.P.] declined." CP at 632. The court also recognized that "[t]he pleadings filed in this, Benton County, matter are identical to those filed in the Walla Walla mater [sic]." CP at 632-33.

Mother timely appeals the issuance of the DVPO.

## ANALYSIS

Mother argues that collateral estoppel bars H.P. from relitigating the issue of whether she committed acts of domestic violence against him.

"Whether collateral estoppel applies to bar relitigation of an issue is reviewed de novo." *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Collateral estoppel, also known as issue preclusion, bars relitigation of an issue in a subsequent proceeding that involves the same parties. *Id.* at 306. Collateral estoppel may only be applied to "preclude only those issues that have actually been litigated and necessarily and finally determined in the earlier proceeding." *Id.* at 307. Further, the party against whom collateral estoppel is asserted against must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Id.*

5

In order for collateral estoppel to apply, Mother bears the burden of establishing the following factors: (1) the issue decided in the earlier litigation was identical to the issue presented in the later litigation; (2) the earlier litigation resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party, to the earlier litigation; and (4) application of collateral estoppel does not work an injustice against the party whom it is applied. *Reninger v. Dep't of Corr.*, 134 Wn.2d 437, 449, 951 P.2d 782 (1998); *McDaniels v. Carlson*, 108 Wn.2d 299, 303, 738 P.2d 254 (1987).

COLLATERAL ESTOPPEL

Mother contends that collateral estoppel precludes H.P. from relitigating the issue of whether she committed acts of domestic violence against him. We agree. In the absence of new evidence or incidents of Mother's alleged acts of domestic violence, H.P. is precluded from relitigating the issue.

As a preliminary matter, in its order denying Mother's motion to revise the commissioner's ruling, the Benton County court seemingly found the inapplicability of collateral estoppel because RCW 7.105.225(2) precludes the doctrine in DVPO proceedings. The court's order reads:

> 5. Although [H.P.] is not a party to the Walla Walla matter it would not matter because RCW 7.105.225(2), further provides:
> > The court **may not** deny or dismiss a petition for a protection order on the grounds that (c) A no-contact order or a restraining order that restrains the respondent's contact with the petitioner has been issued

6

in a criminal proceeding or in a domestic relations proceeding;
(d) The relief sought by the petitioner may be available in a different action or proceeding, or criminal charges are pending against the respondent.

6. Commissioner Holt properly heard this matter as RCW 7.105.225(2), specifically allows simultaneous proceedings (privity or not) without regard to collateral estoppel. Injustice is not a statutory consideration. *Id.*

CP at 633.

Here, neither RCW 7.105.225(2)(c) nor (d) were applicative. First, there were no other orders that precluded Mother from having contact with H.P. in either a criminal or domestic-relations proceeding. Second, there were no other actions pending; the Walla Walla County matter had been adjudicated on the merits. Further, denial of the DVPO on the basis of collateral estoppel would not run afoul of RCW 7.105.225(2)(d) because the denial was not based on the relief sought being "available in a different action."

We now turn to the first element of collateral estoppel, the parity between the issues in each petition. RCW 7.105.225, the applicable statute in the Benton County DVPO proceeding, states in relevant part:

(1) The court shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved the required criteria specified in (a) through (f) of this subsection for obtaining a protection order under this chapter.

(a) For a domestic violence protection order, that the petitioner has been subjected to domestic violence by the respondent.

Further, RCW 26.09.260 states in relevant part:

7

(1) Except as otherwise provided in subsections (4), (5), (6), (8), and (10) of this section, the court shall not modify a prior custody decree or a parenting plan unless it finds, upon the basis of facts that have arisen since the prior decree or plan or that were unknown to the court at the time of the prior decree or plan, that a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child. The effect of a parent's military duties potentially impacting parenting functions shall not, by itself, be a substantial change of circumstances justifying a permanent modification of a prior decree or plan.

(2) In applying these standards, the court shall retain the residential schedule established by the decree or parenting plan unless:

. . . .

(c) The child's present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Father's petition to modify the parenting plan was based on allegations that Mother committed acts of domestic violence against H.P. A multitude of declarations and exhibits were filed in Walla Walla County. Whether Mother committed acts of domestic violence against H.P. was the dispositive issue in the Walla Walla County matter. On August 15, 2022, the court in Walla Walla County dismissed the petition to change the parenting plan ruling Father had failed to establish adequate cause to change the parenting plan. In denying Father's motion for adequate cause to modify the parenting plan, the court in Walla Walla County necessarily concluded Father had failed to prove that Mother had committed acts of domestic violence against H.P.

8

H.P.'s petition for a DVPO in Benton County was based on the same evidence that was before the court in Walla Walla County. On September 7, 2022, almost a month after the court's ruling in the Walla Walla County matter, a commissioner in Benton County granted H.P.'s petition for a DVPO finding that Mother had committed acts of domestic violence against H.P. Because the issue previously litigated in Walla Walla County was identical to the issue in the Benton County matter, the first element of collateral estoppel is met.

We turn next to the second element of collateral estoppel, whether the previous litigation resulted in a judgment on the merits. In Walla Walla County, the court considered numerous declarations and exhibits and, presumably, held a hearing on the petition[1] before denying it on the merits. The court's order dismissing the petition to modify the parenting plan was issued after the court considered the evidence before it. The Walla Walla County matter resulted in a judgment on the merits. The second element of collateral estoppel has been met.

We next analyze the third element of collateral estoppel, whether the parties in the subsequent litigation were parties to, or in privity with a party, to the earlier litigation. Mother argues that H.P. and Father were in privity or that the virtual representation

---

[1] There are no transcripts from the Walla Walla County matter in the record, only filings. However, there is a reference to some kind of hearing in the Walla Walla County matter in the transcript of the hearing on the DVPO in Benton County. CP at 200-01.

doctrine bars H.P. from relitigating the domestic violence issue. We agree that the virtual representation doctrine applies under these facts.

"'Privity' is the 'connection or relationship between two parties, each having a legally recognized interest in the same subject matter.'" *State v. Longo*, 185 Wn. App. 804, 809, 343 P.3d 378 (2015) (quoting BLACK'S LAW DICTIONARY 1394 (10th ed. 2014)). Typically, when parties are found to be in privity, the litigation involves the state, a city, or a county being in privity with one another. *E.g.*, *Barlindal v. City of Bonney Lake*, 84 Wn. App. 135, 925 P.2d 1289 (1996); *State v. Barnes*, 85 Wn. App. 638, 932 P.2d 669 (1997).

In the Walla Walla County matter, Father was the petitioner, Mother the respondent, and H.P., although the subject of the action, was not a party. Similarly, in the Benton County matter, H.P. was the petitioner, Mother the respondent, and Father a mere witness. This is insufficient to establish a mutuality of interests in the same subject matter.

However, Washington recognizes the virtual representation doctrine. *Garcia v. Wilson*, 63 Wn. App. 516, 520, 820 P.2d 964 (1991). The doctrine of virtual representation goes to the third factor of collateral estoppel and allows collateral estoppel to be asserted against a nonparty when the prior litigation involved a party with substantial identity of interests with the nonparty. *Id.* However, the doctrine "must be applied cautiously in order to [ensure] that the nonparty is not unjustly deprived of her

day in court." *Id.* The paramount factor to consider when applying the doctrine is whether the nonparty participated in the former litigation in some way, for instance as a witness. *Id.* at 521. Further, the issue must have been fully and fairly litigated in the prior action, and the evidence and testimony in the present action must be identical to that presented in the former litigation. *Id.* Finally, there should be some evidence that the separation of the litigations "was the product of some manipulation or tactical maneuvering." *Id.*

Here, H.P. may not have participated directly in the Walla Walla County matter but he was undisputedly involved. First, H.P. was the subject of Father's petition to modify the parenting plan. Further, Father testified in his declaration that H.P. "gave me his phone to show me the texts from his mom to him. He gave me permission to view them." CP at 501. The text messages attached to Father's declaration filed in the Walla Walla County matter are identical to the text messages later attached to H.P.'s declaration filed in the Benton County matter. Further, the record clearly reveals H.P.'s desire to reside with Father instead of Mother. Father and H.P. possessed a shared interest in reaching this objective. In his petition for a DVPO, H.P. alleged Mother would scream at him and hit him for "wanting and trying to live with my dad." CP at 8. Father, in a declaration filed in the Walla Walla County matter, stated H.P. "is refusing to return to his mom's . . . . He says he will not go." CP at 136-37. Father and H.P. were intrinsically involved in each other's litigation and sought the same objective.

11

Additionally, there is no dispute that the Walla Walla County matter was fully and fairly litigated. As to the evidence and testimony, the filings in the Walla Walla County matter were either identical to those filed in Benton County, or were attached as exhibits to documents filed in the Benton County matter. Likewise, filings in the Benton County matter were filed as exhibits to declarations in the Walla Walla County matter. Both the Walla Walla County matter and the Benton County matter contained the same evidence. The court recognized this in its order on the motion for revision noting: "The pleadings filed in this, Benton County, matter are identical to those filed in the Walla Walla mater [sic] above." CP at 632-33.

Finally, it appears that the separation of the litigations was the product of some "manipulation or tactical maneuvering." *Garcia*, 63 Wn. App. at 521. The record reveals that H.P. and Father desired the same relief. When the petition to modify the parenting plan was dismissed, H.P. proceeded with the petition for a DVPO with the goal of residing with Father. Notably, H.P. declined the Benton County court's invitation to change venue to Walla Walla County. This is unsurprising given the unfavorable ruling Father received in Walla Walla County on his petition to modify the parenting plan. Based on the facts before us, the virtual representation doctrine applies. The third element of collateral estoppel is satisfied.

Finally, we turn to the fourth element, whether application of the doctrine would work an injustice. For collateral estoppel to apply, it must not work an injustice against

the party against whom the doctrine is to be applied. "Washington courts look to whether the parties to the earlier proceeding received a full and fair hearing on the issue in question." *In re Marriage of Murphy*, 90 Wn. App. 488, 498, 952 P.2d 624 (1998). The injustice factor also recognizes the significant role of public policy. *State v. Vasquez*, 148 Wn.2d 303, 309, 59 P.3d 648 (2002).

As discussed above, the court in Walla Walla County conducted a full and fair hearing regarding the alleged acts of domestic violence committed by Mother against H.P. Because H.P. was both the subject of the Walla Walla County matter and a witness thereto, he will not be deprived of his day in court if collateral estoppel bars him from relitigating the issue.

Lastly, public policy supports our conclusion. If we failed to apply collateral estoppel to the record before us, we would essentially be encouraging a parent who is aggrieved by a court's ruling in one jurisdiction to seek a remedy under the same facts in a competing jurisdiction. The parent-child relationship should not be subject to a blitzkrieg of litigation based on common facts. The fourth and final element of collateral estoppel is met.

Lastly, Mother argues that the court erred in denying her motion to revise the commissioner's ruling and for finding, by a preponderance of the evidence, that she committed acts of domestic violence against H.P. Because we concluded that collateral

No. 39486-7-III
*In re Matter of H.P.*

estoppel bars H.P. from relitigating the issue of Mother's alleged domestic violence

against him, we need not address this issue.

## CONCLUSION

We remand with instructions to the court to vacate the order and dismiss the

petition.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.

14