62 P.3d 548 (2003)
115 Wash.App. 384
INTERMOUNTAIN ELECTRIC, INC., a Washington corporation, Appellant,
v.
G-A-T BROS. CONSTRUCTION, INC., a Washington corporation, Old Standard Life Insurance Co., an Idaho corporation, and Wilson-Coghlan LLC, a Washington limited liability company, Respondents.
No. 20675-1-III.
Court of Appeals of Washington, Division 3, Panel Six.
February 4, 2003.
*550 Joel C. McCormick, Herrig, Vogt & Stoll, Spokane, WA, for Appellant.
Michael H. Church, Stamper, Rubens, Stocker, Spokane, WA, for Respondents.
*549 SWEENEY, J.
This is an action to dismiss a construction lien as invalid and frivolous. The superior court ruled that the lien was invalid because it was filed beyond the 90-day time limit required by the statute. The court also ruled that, because the lien was filed beyond the 90-day time limit, it was also frivolous. The subcontractor, Intermountain Electric, Inc., then filed a second lien. We conclude that the first lien was indeed invalid, but not frivolous, and that the second lien, in the face of the court's ruling, was both invalid and frivolous. We therefore affirm the court's ruling dismissing the first lien, but reverse the ruling that it was frivolous. We affirm the rulings on the second lien. We remand for reconsideration of attorney fees in the trial court and on appeal in accordance with this opinion.

FACTS
Ameracare, Inc. develops retirement communities. It hired G-A-T Bros. Construction, Inc. as the general contractor to build the Evergreen Retirement Center. The project consisted of six buildings, A through F. G-A-T Bros. agreed, orally, with Intermountain Electric to do the electrical work.
Intermountain worked continuously starting in November of 1996. Intermountain billed G-A-T Bros. on a time and materials basis for work performed. In July 1999, two buildings were yet to be completed. John Tucker, a principal with both G-A-T Bros. and Ameracare, instructed Intermountain to suspend operations pending further financing. G-A-T Bros. owed Intermountain $98,320.72 for completed work.
The parties disagree as to whether Mr. Tucker told Intermountain to remain "on standby" to resume work. But Intermountain left its jobsite trailer on the project site and contacted Mr. Tucker every few weeks to determine when work would resume. Mr. Tucker repeatedly assured Intermountain that HUD funding was imminent and that work would resume soon. Intermountain continued to perform miscellaneous repair work at the site.
Intermountain last performed active work on June 6, 2000. Intermountain filed a materialmen's lien on the property 94 days later, on September 8, 2000. On the application form, Intermountain represents that: "Claimant is still currently working on the project. Claimant's work is suspended, and Claimant is on standby. Claimant's last active work was done June 6, 2000." Clerk's Papers (CP) at 12. Intermountain did not remove its jobsite trailer until August 9, 2001.
*551 Ameracare filed for Chapter 11 bankruptcy protection on January 5, 2001. Wilson-Coghlan (Coghlan) and Old Standard Life Insurance Company were secured creditors. Old Standard held first and second liens on the project site property. Coghlan held deeds of trust comprising liens three through five. All of these liens date to 1997. So to establish priority, Intermountain's lien had to relate back to work performed in 1996.
Intermountain sued G-A-T Bros. and Ameracare for breach of contract and foreclosure of lien on May 8, 2001.
On June 21, 2001, the bankruptcy court granted Coghlan relief from stay to proceed with the trustee's sale. The trustee's sale was set for August 10, 2001. On July 26, 2001, the bankruptcy court ordered Intermountain to desist from further action against Ameracare pursuant to the stay. Intermountain amended its complaint to dismiss Ameracare and join Coghlan and Old Standard.
On October 19, 2001, G-A-T Bros. stipulated to entry of judgment against it for $96,970.91, plus interest.
Intermountain moved for summary judgment to establish the validity and priority of its lien over those of Coghlan and Old Standard. Intermountain claimed, among other things, that leaving its trailer at the site constituted "furnishing equipment." CP at 377. And, therefore, the 90-day lien-filing period did not begin to run in June 2000, but in August 2001.
On October 4, 2001, Coghlan moved to show cause why the lien should not be stricken as invalid and frivolous for failure to file within the statutory 90-day limit. Again, the date of last active work was June 6, 2000, and the date the lien was filed was September 8, 94 days later. Following a hearing, the court entered findings and conclusions that the last day of work was June 6, 2000. And, since the lien was not filed within 90 days of that date, it was invalid on its face. The court also concluded that an invalid lien is, ipso facto, a frivolous lien. It then awarded Coghlan fees and costs under the frivolous lien provisions of RCW 60.04.081(4).
On November 5, 2001, Intermountain filed an amended lien, showing August 9, 2001, the date the jobsite trailer was removed, as the last date of labor. The court ruled that the second lien was invalid and frivolous also, and awarded fees and costs to Coghlan.

DISCUSSION
We are asked to review the court's interpretation of the construction lien statute. Chapter 60.04 RCW. Statutory interpretation is a question of law which we review de novo. W.R.P. Lake Union Ltd. P'ship v. Exterior Servs., Inc., 85 Wash.App. 744, 749, 934 P.2d 722 (1997). The mechanics' and materialmen's lien statute is in derogation of common law and is, therefore, strictly construed. Lumberman's of Wash., Inc. v. Barnhardt, 89 Wash.App. 283, 286, 949 P.2d 382 (1997). The trial court's findings of fact will be upheld if they are supported by substantial evidence. W.R.P., 85 Wash.App. at 750, 934 P.2d 722.
FIRST LIEN
Preliminarily, Intermountain contends in its brief (at oral argument counsel moved away from this position) that the court erred by ruling on the validity of the lien. The only issue before the court, Intermountain contends, was whether the lien was frivolous, i.e., whether its validity was even debatable. But the show cause hearing necessarily and inevitably resolved the validity issue also. Intermountain had also moved for summary judgment on the issue of validity. Coghlan's frivolous lien claim was based on the facial invalidity of Intermountain's lien. The court did not err in ruling on the validity.
90-Day Filing Period is Strictly Enforced. Every person claiming a lien under chapter 60.04 RCW must file a notice of claim of lien for recording in the county where the subject property is located not later than 90 days after the person has ceased to furnish labor, professional services, materials, or equipment. "The period provided for recording the claim of lien is a period of limitation and no action to foreclose a lien shall be maintained unless the claim of lien is filed for recording within the ninety-day. *552 period stated." RCW 60.04.091(2); Lumberman's, 89 Wash.App. at 286, 949 P.2d 382.
Intermountain's last day of work was June 6, 2000. The lien was filed 94 days later on September 8. The lien is, then, invalid on its face.
Intermountain nonetheless argues that the "last day worked" rule operates to deny a statutory remedy to the supplier who delays filing the lien beyond 90 days in reliance on the developer's assurances that work will shortly resume. Intermountain urges a change in the law. It argues that the 90-day filing period should start when the developer finally decides to abandon the project or repudiates the contract.
Intermountain relies on Bradley v. Donovan-Pattison Realty Co. for the proposition that the abandonment rule is consistent with Washington law and was virtually adopted in that case. Bradley v. Donovan-Pattison Realty Co., 84 Wash. 654, 147 P. 421 (1915). Bradley addresses a different issue, however. In Bradley, substantial work was done well within 90 days of the lien filing date. Id. at 657, 147 P. 421. And so the holding is merely that relation back of the lien to the commencement of the project is not defeated by a temporary cessation of work which is subsequently resumed. Id. at 658, 147 P. 421.
Here, no work was done after June 6, 94 days before the lien was filed. And work never resumed.
Intermountain's argument was also presented in John Dower Lumber Co. v. McCammon.[1] There, the court declined to adopt the owner's repudiation of the contract as the triggering event for commencing the statutory period. There, repudiation coincided with the last day of work. And that was over nine months before the lien was filed. So, even if the court had adopted a rule that repudiation was the triggering event for the 90-day limitation period, the lien was filed late. John Dower Lumber Co. v. McCammon, 141 Wash. 381, 384, 250 P. 107 (1926).
Similarly, cases from other jurisdictions cited by Intermountain are distinguishable, because the lien laws they interpret are different. Specifically, the governing lien statutes require that a contract be completed before a materialman's lien can be filed.[2] Because completion is a statutory prerequisite for filing a lien, the courts there create an exception where work is interrupted or abandoned.
That is not the rule in Washington. Our statute expressly provides that the materialman need not wait until the completion of the project. He or she can file a lien immediately upon completion of the work for which compensation is due. Not only may the materialman file, he or she must do so within 90 days or lose the right. RCW 60.04.091(2). The abandonment debate is, therefore, superfluous here in Washington.
The court here correctly determined that Washington has opted for a date certain, identifiable by an objective eventwork performed or equipment furnished by a materialman rather than the "moving target" of a date when the intent to abandon the project formed in a developer's mind.
Intermountain next argues that leaving its trailer on the site constituted "furnishing equipment" for the purposes of calculating the lien filing deadline.
Even small quantities of additional supplies, if furnished at the request of the owner to complete the contract will serve to keep the 90-day lien limitation period from starting. Rieflin v. Grafton, 63 Wash. 387, 389, 115 P. 851 (1911) (three panes of glass delivered at owner's insistence to replace defective panes). But supplies cannot be delivered solely for the purpose of extending the lien deadline. Petro Paint Mfg. Co. v. Taylor, 147 Wash. 158, 162-63, 265 P. 155 (1928).
*553 Here, Intermountain does not contend, and the record does not suggest, that this trailer was furnished at the request of G-A-T Bros. to complete the contract. Rather, Intermountain left the trailer onsite for its own convenience, to perform the incidental repairs (the last of which occurred on June 6), and to be ready in the event that construction resumed.
Maintaining its trailer on site did not constitute furnishing materials for the purposes of tolling the 90-day lien-filing period.
The lien was then filed outside the 90 days and was invalid on its face.
Not Frivolous. Intermountain contends that the trial court misconstrued the statute and erroneously believed that any lien found to be invalid is ipso facto frivolous. We agree.
If a lien is determined to be frivolous, the court must release the lien and award attorney fees and costs to the prevailing party. RCW 60.04.081(4). To be frivolous, the lien must be improperly filed "beyond legitimate dispute." W.R.P., 85 Wash. App. at 752, 934 P.2d 722. But, even if a lien is ultimately found to be invalid, it is frivolous only if it presents no debatable issues and is so devoid of merit that it has no possibility of succeeding. RCW 60.04.081; W.R.P., 85 Wash.App. at 752, 934 P.2d 722. That is, every frivolous lien is invalid. But not every invalid lien is frivolous. This distinction is important.
Here, the trial court might have found that the presence of the trailer did constitute equipment furnished in furtherance of the contract. Alternatively, the court might have been persuaded that abandonment should trigger the 90-day filing period and that the continued presence of the trailer demonstrated Intermountain's reliance on G-A-T Bros.' lack of intent to abandon the project. Or the court might have been persuaded that the liberal construction given to the lien statute in general applied also to the statute of limitations. The court might then have decided to overlook the four days by which Intermountain missed the filing deadline.
The court, correctly, did none of these. But this does not automatically render the contentions so utterly devoid of merit as to be frivolous. At a minimum they represent a good faith argument for a change in existing law and are supported by authority. As such they are not frivolous. Morehouse v. Goodnight Bros. Constr., 77 Wash.App. 568, 574, 892 P.2d 1112 (1995).
SECOND LIEN
Intermountain argues that the November 5, 2001 lien was not an amendment of the September 8, 2000 lien. It was a new lien filed in response to the court's ruling that the first was invalid.
The court properly characterized this lien filing as frivolous.
Once a lien is declared invalid and the 90-day filing period has run, the lien cannot be amended so as to make it valid. McMullen & Co. v. Croft, 96 Wash. 275, 278-79, 164 P. 930 (1917). "`A pleading which shows upon its face that an action is barred by the statute of limitations may not be amended.'" Lumberman's, 89 Wash.App. at 291, 949 P.2d 382 (emphasis omitted) (quoting McMullen, 96 Wash. at 279, 164 P. 930).
Intermountain objects to the characterization of its second lien as an amendment of the first. Whether the second lien was new or recycled, however, the validity of the claim of lien depended on a finding that August 9, 2001, the date Intermountain removed its jobsite trailer, was the last day work was performed or equipment furnished. The trial court had already listened to this argument and rejected it. The court had ruled that the on-site trailer did not toll the statute of limitations, which started to run on June 6, 2000.
Although the first lien presented issues of debatable merit, the second lien did not. Once the court unambiguously ruled that the presence of the trailer did not prevent the 90-day limitation period from commencing on June 6, 2000, the November 5, 2001 lien was improperly filed beyond legitimate dispute. It was not only invalid but was also frivolous.
*554 ATTORNEY FEES
The attorney fees analysis under the statutory scheme is not simple. Reduced to its essence, however:
(1) Intermountain is entitled to its attorney fees as prevailing party for defending the first frivolous lien claim action pursuant to RCW 60.04.081(4).
(2) Coghlan is entitled to its attorney fees for bringing the action to dismiss the second lien as frivolous (the lien filed after a declaration of invalidity by the court), pursuant to RCW 60.04.081(4).
(3) Both parties have prevailed in part in the Court of Appeals. And each is entitled to a proportionate share of its attorney fees attributable to its successful efforts in this court: Intermountain for its efforts in reversing the court's ruling that the original lien was frivolous; Coghlan for upholding the ruling that the second lien was frivolous and for upholding generally the invalidity of the lien.

CONCLUSION
In summary, we conclude the September 8, 2000 lien was invalid but not frivolous and the November 5, 2001 lien was both invalid and frivolous. We therefore affirm the superior court's rulings as to the validity of the liens, but reverse the ruling that the September 8 lien was frivolous and remand for reassessment of fees and costs in accordance with this opinion.
WE CONCUR: SCHULTHEIS and KURTZ, JJ.
NOTES
[1] John Dower Lumber Co. v. McCammon, 141 Wash. 381, 250 P. 107 (1926).
[2] See, e.g., Hayward Lumber & Inv. Co. v. Graham, 104 Ariz. 103, 105, 449 P.2d 31 (1968) (applying A.R.S. § 33-993); Wahl v. S.W. Sav. & Loan Ass'n, 12 Ariz.App. 90, 95, 467 P.2d 930 (1970) (same); Allison v. Schuler, 38 N.M. 506, 36 P.2d 519, 519 (1934) (applying N.M. Comp. St. § 82-206); Hot Springs Plumbing & Heating Co. v. Wallace, 38 N.M. 3, 27 P.2d 984, 987 (1934) (same); Stark-Davis Co. v. Fellows, 129 Or. 281, 288, 277 P. 110 (1929) (applying Or. L. § 10195).