251 P.3d 293 (2011)
DIVERSIFIED WOOD RECYCLING, INC., a Washington corporation, Respondent,
v.
Harold JOHNSON, also known as Hal Johnson and Jane Doe Johnson, husband and wife, Appellants.
No. 65263-0-I.
Court of Appeals of Washington, Division 1.
May 16, 2011.
*295 John Henry Guin, Law Office of John H. Guin, PLLC, Spokane, WA, for Appellants.
Maris Baltins, Law Offices of Maris Baltins, P.S., Spokane, WA, for Respondent.
BECKER, J.
¶ 1 This is the first of two linked opinions deciding the respective appeals by a father and son, both named Harold Johnson, concerning a construction lien on property in Spokane County. The younger Harold Johnson held himself out as the owner of the property, hired respondent Diversified Wood Recycling Inc. to clear brush and trees from the property, and then refused to pay the bill. Diversified filed a claim of lien, initiated a foreclosure action, served summons and complaint on the younger Harold Johnson, and obtained a judgment of foreclosure. The younger Harold Johnson is the appellant in this first case.
¶ 2 The trial court determined that Diversified filed the claim of lien less than 90 days after the last day Diversified's crew furnished labor to improve the property. Because the findings pertaining to this issue are supported by substantial evidence, we reject appellant's argument that Diversified missed the statutory deadline for filing a lien claim.
¶ 3 Appellant also argues that the lien expired because Diversified failed to comply with the statutory requirement to serve the owner of the property within 90 days of filing the foreclosure action. He asserts that the owner of the liened property is a limited liability company, Kuleana LLC (Kuleana). The registered agent of Kuleana as shown in the records of the secretary of state is Harold Johnson. Diversified served the foreclosure action on the younger Harold Johnson, whose office address is the address of Kuleana's registered agent. The older Harold Johnson claimed that he used the same office address as his son and that he, not his son, was actually Kuleana's registered agent. We agree with the trial court that under these circumstances, where the two Harold Johnsons merged their identities in the public record, Diversified's service of the complaint upon "a Harold Johnson" satisfied its burden of proving compliance with the statutory requirement of serving notice upon the owner shown by the public record.
¶ 4 Finally, appellant argues that the foreclosure action must be dismissed because Diversified failed to comply with a different statutory requirement: to join the owner, allegedly Kuleana, as a party to the action. We hold the statute does not make joinder of the owner a prerequisite for maintaining a foreclosure action.
¶ 5 The judgment of foreclosure is affirmed.

BACKGROUND
¶ 6 According to unchallenged findings of fact entered by the trial court, defendant Harold Johnson commenced a planned unit development known as the River Ranch on the Little Spokane on certain real property located in Spokane County. Diversified Wood Recycling Inc. (Diversified) is a land clearing and logging corporation belonging to Tim Davison.
¶ 7 There are two Harold Johnsons in this case, father and son. We will refer to the Harold Johnson who eventually answered the foreclosure complaint as "Junior," and we will refer to his father as "Senior." Where we do not know if the actor is Junior or Senior, we will simply refer to "Harold Johnson."
¶ 8 Junior, representing that he was the owner of the property, met Davison on the property in September 2006 and discussed his desire to have some land clearing done. Davison prepared a "Bid to clean up slash at Jim Hill Rd. Development" based on a price per cubic yard of material hauled off.[1] He addressed the bid to "Hal Johnson" at an address on 23rd Street Southeast in Puyallup, Washington. It is undisputed that the *296 Puyallup address is Junior's office address. Junior reviewed and signed the bid, accepting its terms.
¶ 9 Diversified's crew performed work on the property on October 2 and 3, 2006, and immediately sent two invoices totaling $10,680 for that work to "Hal Johnson" at the Puyallup address.[2] The invoices went unpaid. Diversified sent a final notice dated January 8, 2007, but again received no payment. Davison concluded legal action would be necessary. Information he obtained from county records and from a title company confirmed that the owner and taxpayer for the parcel of property on which Diversified performed the work was Harold Johnson at the Puyallup address. Diversified recorded a claim of lien on that parcel on March 2, 2007, and then filed a foreclosure action in Spokane County Superior Court on May 16, 2007.
¶ 10 The foreclosure complaint named as defendants "Harold Johnson, also known as Hal Johnson and Jane Doe Johnson, husband and wife," who were alleged to be the "owner or reputed owner" of the subject property. The complaint stated that Diversified began to furnish labor and materials for use in the improvement of the property on October 2, 2006, and ceased work on December 4, 2006. Diversified sought judgment for foreclosure of the lien and for $10,680 plus interest and attorney fees. Diversified had the complaint personally served upon Junior on June 11, 2007, at his personal residence, an address on Viewpoint Circle Northeast in Tacoma, Washington. Junior answered the complaint on August 15, 2007.
¶ 11 A bench trial began on April 14, 2008, before the Honorable Robert D. Austin. Junior argued that Diversified abandoned the job after 2 days and recorded the lien more than 90 days after completing the work. Junior also argued that Diversified failed to join and serve the owner of the property in the foreclosure action. Thus, he sought dismissal of the action on grounds that the lien had expired.
¶ 12 Junior testified that his father bought the property with the intent of developing a portion of it. He said he himself was the president of a contracting company called Northwest Infrastructure that was responsible for coordinating improvements such as roads and utilities for the planned unit development project. Junior said he hired Diversified on behalf of Northwest Infrastructure. He denied owning any of the property. According to Junior's testimony, the owner was Kuleana.[3]
¶ 13 After two days of trial, the court found that Diversified had satisfied the statutory prerequisites for foreclosing a lien. The court entered judgment in favor of Diversified, declaring a lien on "the whole of the real property" described in the lien claim for a total of $67,569.55, including the unpaid invoices plus interest and $55,285.44 in attorney fees.[4] The court ordered sale of the property to satisfy the judgment.
¶ 14 This opinion addresses Junior's appeal from the judgment of foreclosure. In postjudgment proceedings, Senior moved unsuccessfully to intervene and vacate the judgment. The postjudgment proceedings and Senior's appeal are addressed in the second of these two linked opinions, No. 65264-8-I.

THE TRIAL COURT HAD SUBJECT MATTER JURISDICTION
¶ 15 As a threshold matter, we reject Junior's contention that if a lien claimant fails to satisfy the statutory prerequisites for foreclosure of a lien, the trial court lacks subject matter jurisdiction to hear the action.
¶ 16 "A tribunal lacks subject matter jurisdiction when it attempts to decide a type of controversy over which it has no authority to adjudicate." Marley v. Dep't of Labor & Indus., 125 Wash.2d 533, 539, 886 P.2d 189 (1994). The subject matter jurisdiction of the superior court in Washington derives from the state constitution. "The superior court shall have original jurisdiction in all cases . . . at law which involve the title *297 or possession of real property. . . . The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." WASH. CONST. art. 4, § 6. Because a dispute over a claim of lien concerns title and possession of real property, it is a type of controversy which the superior court has authority to adjudicate.
¶ 17 A lien claimant's failure to follow statutory requirements may mean that the superior court is required to dismiss the action. See, e.g., Pac. Erectors, Inc. v. Gall Landau Young Constr. Co., 62 Wash.App. 158, 165, 813 P.2d 1243 (1991) (claimant's failure to serve the owner within the statutory period caused the lien to expire and required dismissal of the action), review denied, 118 Wash.2d 1015, 827 P.2d 1011 (1992). But it does not mean the superior court lacked subject matter jurisdiction.
¶ 18 Junior moved to have this action dismissed for lack of subject matter jurisdiction. The motion was properly denied.

THE 90 DAY RECORDING DEADLINE WAS MET
¶ 19 To establish a construction lien, a party must "file for recording . . . a notice of claim of lien not later than ninety days after the person has ceased to furnish labor, professional services, materials, or equipment." RCW 60.04.091. To establish a lien, the labor or equipment must be furnished "for the improvement of real property." RCW 60.04.011(4). "Improvement" includes "clearing" of or on any real property. RCW 60.04.011(5). The 90 day period is strictly enforced. Intermountain Elec., Inc. v. G-A-T Bros. Constr., Inc., 115 Wash.App. 384, 391, 62 P.3d 548 (2003).
¶ 20 Diversified invoiced Junior for the land clearing work done on October 2 and 3, 2006. Diversified recorded its claim of lien on March 2, 2007. Junior claims Diversified missed the 90 day deadline because nearly 5 months elapsed between when the invoiced work was done and when the claim of lien was filed.
¶ 21 Diversified presented proof of compliance with RCW 60.04.091 through testimony by Davison, Davison's wife, and employee Jake Fischer. Fischer testified that when he and his crew finished their work on October 3, they left an excavator on the site in anticipation of doing more work in the future. He said Les Greger, who worked for Harold Johnson, later called and obtained permission to use the excavator. Fischer said he and his crew went back to the site on December 4 to pick up the excavator. On their way out, they saw stumps and brush remaining from earlier land clearing activity. Even though no one had specifically asked or directed them to do so, they removed and hauled off three loads of tree stumps and slash. "Q. You just did it on your own? A. Well, it was just our standard deal. We  clean up the job. I mean that's what we were there to do is to remove the slash."[5]
¶ 22 Junior testified that the arrangement he made with Davison was not a contract. According to Junior, Davison planned to sell the slash and downed timber and credit the sale price against the price of Diversified's services. He claimed that Davison and his crew refused to return after October 3 to finish the job despite repeated phone calls. He testified that the alleged removal of the three loads on December 4 "never happened."[6]
¶ 23 The trial court found that the parties did have a contract for removal of the slash, formed by Junior's signature on Diversified's bid. "The process of slash removal from the property was to continue over the course of the Project, during which time plaintiff would haul slash off the Property for disposal at its yard facilities and return to the Property for further removal and disposal when enough slash had accumulated."[7] The court found that Diversified's employees left the excavator on the property "at the request of Mr. Johnson."[8] The court further found that *298 due to the lack of payment on the invoices, Davison directed his employees to remove the excavator from the property. They went to the property on December 4 to remove the excavator, and "as part of the job, hauled away three truckloads of tree stumps and slash."[9]
¶ 24 The trial court's findings of fact will be upheld if they are supported by substantial evidence. Intermountain, 115 Wash. App. at 390-91, 62 P.3d 548. Substantial evidence is a quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true. Proctor v. Huntington, 146 Wash.App. 836, 845, 192 P.3d 958 (2008), aff'd, 169 Wash.2d 491, 238 P.3d 1117 (2010), cert. denied, ___ U.S. ___, 131 S.Ct. 1700, ___ L.Ed.2d ___ (2011).
¶ 25 Junior contends the trip back to pick up the excavator on December 4 was not "part of the job" because, he claims, there is no evidence that he specifically requested Diversified to leave the excavator on the site. Junior cites Intermountain. a case in which the lien claim was filed 94 days after the last day Intermountain, a subcontractor, performed active work on the project. Intermountain tried to avoid the 90 day deadline by arguing that leaving its trailer on the jobsite constituted the furnishing of materials. The court noted that even small quantities of additional supplies, if furnished at the request of the owner to complete the contract, will serve to keep the 90 day lien limitation period from starting. But Intermountain did not contend that the trailer was furnished at the request of the general contractor to complete the contract. Rather, Intermountain left the trailer on the site "for its own convenience, to perform the incidental repairs (the last of which occurred on June 6), and to be ready in the event that construction resumed." Intermountain, 115 Wash.App. at 393, 62 P.3d 548. Thus, maintaining the trailer on site did not constitute furnishing materials. As a result, the lien was invalid because it had been filed outside the 90 day period. Junior contends that the lien in this case must similarly be held invalid because the evidence did not support the finding that the excavator remained on the property "at the request of Mr. Johnson."
¶ 26 Fischer testified that one of Junior's employees requested permission to use the excavator. This is sufficient to support the finding that the equipment was furnished through December 4 for the improvement of the property, not simply for the convenience of the Diversified crew.
¶ 27 In addition, and more significantly, Diversified proved the furnishing of labor on December 4. The trial court found that when Diversified's employees hauled away three truckloads of stumps and slash on December 4, they did so "as part of the job." Junior contends this finding is unsupported because neither he nor his employees asked for the removal of the slash on that date and Diversified did not invoice him for the work done on that date. But the statute does not require that there be an explicit request for particular services rendered as part of a job and it does not require that each service be specifically itemized in a bill.
¶ 28 The bid, which Junior reviewed and signed, was "to clean up slash at Jim Hill Rd Development."[10] According to an unchallenged finding, the process of slash removal from the property "was to continue over the course of the Project."[11] Junior's own testimony implied that he expected Diversified to remove more slash after October 3.[12] Fischer described the removal of stumps and slash on December 4 as routine clean-up work: "Well, it was just our standard deal. We  clean up the job. I mean that's what we were there to do is to remove the slash."[13] This evidence substantially supports the finding that slash removal on December 4 was "part of the job."
¶ 29 Because December 4, 2006, was the last day Diversified furnished services and equipment on the site, the recording of the *299 lien on March 2, 2007, was timely. We conclude Diversified established a valid lien in compliance with RCW 60.04.091.

THE OWNER WAS SERVED WITH THE ACTION
¶ 30 Junior contends that even if the lien was valid, the action must be dismissed on the ground that Diversified did not serve the owner with the complaint. A valid lien will expire unless the lien claimant files an action to enforce the lien within 8 months of recording the lien and serves "the owner of the subject property" within 90 days of filing the action:
No lien created by this chapter binds the property subject to the lien for a longer period than eight calendar months after the claim of lien has been recorded unless an action is filed by the lien claimant within that time in the superior court in the county where the subject property is located to enforce the lien, and service is made upon the owner of the subject property within ninety days of the date of filing the action.
RCW 60.04.141. At the stage of recording the lien, the claimant's notice of lien must state the name of the "owner or reputed owner of the property, if known, and, if not known, that fact shall be stated." RCW 60.04.091(1)(e). For the later stage of filing an action, RCW 60.04.141 does not use the term "reputed owner." It requires service "upon the owner."
¶ 31 The requirement for service upon the owner cannot be satisfied by service upon a reputed owner. This is illustrated in Schumacher Painting Co. v. First Union Management, Inc., 69 Wash.App. 693, 699, 850 P.2d 1361, review denied, 122 Wash.2d 1013, 863 P.2d 73 (1993). Schumacher Painting, a subcontractor, did not get paid by the contractor. Schumacher filed a claim of lien mistakenly naming the management company, First Union Management Inc., as the owner. Schumacher eventually filed a lien foreclosure action, also mistakenly naming First Union Management as the owner. The management company answered the complaint and averred failure to join an indispensable party. Much litigation followed, in which Schumacher belatedly attempted to join the record owner, an investment trust named First Union Real Estate Equity and Mortgage Trust.
¶ 32 It was understandable why Schumacher might think the owner was First Union Management. The subcontract incorrectly identified First Union Management as the owner, and Schumacher claimed that First Union Management held itself out as the owner. Nevertheless, the trial court dismissed the action for failure to serve the trust. This court affirmed, holding that it was imperative for the contractor to serve the owner shown by the public record:
Schumacher argues that service on the reputed owner, First Union, is sufficient. We disagree. Authority to name the reputed owner is limited to the filing of the notice of claim of lien which must be done within a short period of time in order to preserve lien rights (90 days). Former RCW 60.04.060. The lien claimant has 8 months to file the foreclosure action and 90 days to serve all necessary parties. Ample time is afforded to conduct a title search to determine the identity of the property owner. Because Trust is the property owner, it was a necessary party. It was not served until well after the statutory time period had passed. Schumacher did not comply with the notice requirements of former RCW 60.04.100. The lien therefore expired and the foreclosure action is void. Dismissal is appropriate. Pacific Erectors, [62 Wash.App.] at 165 [813 P.2d 1243]; Queen Anne Painting Co. v. Olney & Assocs., Inc., 57 Wash.App. 389, 393, 396, 788 P.2d 580 (1990); Kinskie v. Capstin, 44 Wash.App. 462, 466, 722 P.2d 876 (1986).
Schumacher, 69 Wash.App. at 700, 850 P.2d 1361.
¶ 33 Schumacher was decided under a predecessor statute that required service of notice upon all "necessary parties," while the current statute simply requires service upon the "owner." Still, there is no question that the current deadline for service "upon the owner" must be strictly enforced and without *300 such service, the lien no longer binds the property.
¶ 34 Analogizing to Schumacher, Junior argues that Diversified allowed itself to be misled by appearances and the similarity of names into believing that he was the record owner of the property, when a competently performed search of title records would have revealed the true owner to be Kuleana.
¶ 35 At the time Davison filed a lien claim on behalf of Diversified, he had good reason to believe the record owner of the property was Harold Johnson. When Davison met Junior on the property in September 2006, Junior represented that he was the owner of the property. Junior testified that he signed the bid.[14] The bid bore no indication that the Harold Johnson who signed it was signing in a representative capacity.
¶ 36 When Davison was preparing to file his claim of lien, he investigated the title. The records he obtained were made exhibits at trial. One was a "parcel data locator" from the assessor's office for tax parcel no. 38345.9036, which represented the parcel to be 222.7 acres and listed the parcel's owner and taxpayer as "Johnson, Harold" at the Puyallup address. A map was attached.[15] Diversified obtained this information on February 7, 2007. The information was confirmed by a "property profile" Diversified obtained from a Spokane title company on February 13.[16] Attached to the property profile from the title company was a copy of a deed from Michael McGarvey to "Harold Johnson, a single person" recorded on March 31, 2006. The face of the deed designates three tax parcel numbers, one of which was tax parcel 38345.9036.[17]
¶ 37 Davison recorded the claim of lien on March 2, 2007. The legal description used in the claim of lien to describe the property subject to the lien was the same legal description of parcel no. 38345.9036 set forth in the document from the assessor's office.[18]
¶ 38 Diversified filed the foreclosure action on May 16, 2007. It appears that Diversified did not become aware there was an issue about the identity of the property owner until August 15 when Junior answered the complaint, denying the allegation of ownership. Diversified served a request for discovery of facts and documents supporting that answer. Junior answered that the owner of the property described in the claim of lien was Kuleana.[19] The document he provided in support of this answer at the time did not provide proof of ownership. It was merely a printout from the Washington secretary of state showing that Kuleana had been incorporated as a limited liability company on March 27, 2006. The printout identified the registered agent as "Harold Johnson" at the address on 23rd Street Southeast in Puyallup.[20]
¶ 39 On April 4, ten days before trial, Junior submitted an affidavit from Senior in support of a pretrial motion to dismiss.[21] Senior declared that it was he who purchased "River Ranch" from McGarvey in March 2006. He identified "River Ranch" as "the property that is the subject of this Claim of Lien." He stated he continued to be the sole owner of the "River Ranch" until February 2, 2007, when "River Ranch" was conveyed to Kuleana, and that his son had never been an owner or maintained any interest in River Ranch. He stated that he formed Kuleana in March 2006 for the purpose of conveying the property and that he did convey it on February 2, 2007, and that he had always been its sole member. He stated that he had never met or spoken with Davison and had never requested Diversified to remove slash or stumps from "River Ranch." Attached to Senior's affidavit was a copy of the McGarvey deed and in addition, a copy of a deed conveying property from grantor "Harold Johnson" to grantee "Kuleana, LLC." The deed to Kuleana is stamped with a Spokane County recording date of February 2, 2007, *301 and it bears a cover sheet with a note stating, "Assessor's Tax Parcel ID#: Parcel(s) not assessed yet."[22] Diversified objected at trial to admitting the deed to Kuleana into evidence on the ground that it should have been produced earlier in discovery. The trial court admitted the deed into evidence based on Junior's representation that the deed had been in Senior's possession, not Junior's.[23]
¶ 40 Junior argues the deed shows that Kuleana was the owner of the property subject to the lien and dismissal should have been granted because Diversified failed to serve Kuleana within 90 days of recording the lien.
¶ 41 The current version of chapter 60.04 RCW does not define "owner," but the term "appears to mean the record holder of the legal title."[24] We accept that definition, and we conclude that RCW 60.04.141 obligated Diversified to serve the foreclosure action upon the record holder of the legal title of the property designated in the claim of lien within 90 days of recording the lien, in order to keep the lien alive.
¶ 42 The findings of the trial court pertinent to the issue of service upon the record owner are as follows:
On February 7, 2007, Ms. Davison went to the Spokane County Recorder's Office to obtain the legal description of the property and to confirm the owner.
The materials and information Ms. Davison received confirmed defendant Johnson's ownership of the Property. Information received from Spokane County Title also indicated that the Property was owned by Harold Johnson.
Defendant Johnson's contention that the real property is actually owned by his father is not well taken. Even assuming that that were true, defendant Johnson was an agent and subcontractor of his father, Harold Johnson, and was intimately involved with his father in the development of this property.
On March 2, 2007, Diversified Wood Recycling filed a Claim of Lien with the Spokane County Auditor's office under recording 5504627 for the principal amount of $10,680.
The Property against which plaintiff's Claim of Lien was filed is legally described as follows:
34-24-43: SW ¼ TOG W/S ½ of NW ¼ EXC PTN DAF; COMMENCING NW COR OF S ½ OF NW ¼, TH S 89*42'19" E 980.00 FT TO POB, TH S 0*43'57" E 547.26 FT, TH S 36*53'20" E 314.97 FT, TH N 53*06'40" E 310.96 FT, TH N 63*08'41" E 388.05 FT, TH N 46*00'40" E 203.00 FT, TH N 43*59'20" W 407.00 FT, TH N 89*42'19" W 654.36 FT TO POB; & TOG W/ NE ¼ LYG ELY OF CRESCENT (YALE) RD EXC PTN LYG NLY OF LN DAF: BEG PT ON N-S CL OF SEC 34 371.1 FT S OF N ¼ COR BEING ON ELY ROW LN OF CRESCENT RD, TH SWLY ALG ELY ROW LN 128.9 FT TO POB OF LN, TH ELY 125*56' TO L 776.2 FT, SELY 37*05' TO R 166 FT TO WLY ROW LN OF INLAND EMPIRE HWY #6 & END OF LN
Situated in the County of Spokane, State of Washington
Plaintiff commenced a Claim of Lien action against defendant by filing its Complaint in Spokane County Superior Court on May 16, 2007.
The defendant was served with the Complaint at his personal residence on June 11, 2007.
That the defendant's father, also Harold Johnson, was never served with the Complaint.
That on March 31, 2006, Harold Johnson, a single person, purchased the Property from Michael R. McGarvey, which *302 said purchase was recorded by statutory warranty deed in Spokane County, Washington under recording number 5361829.
That on February 2, 2007, Harold Johnson conveyed the Property to Kuleana, LLC by statutory warranty deed, which said conveyance was recorded in Spokane County, Washington under recording number 5493141.
That Harold Johnson was the registered agent of Kuleana, LLC.
That the defendant is the owner and president of Northwest Infrastructure, Inc., which was responsible for coordinating and conducting the improvements on the Property.[[25]]
¶ 43 The court concluded that Diversified proved it met the statutory requirements "by providing notice of the Claim of Lien and/or personally serving a Harold Johnson" with the foreclosure complaint.[26]
¶ 44 Junior does not dispute that service on the registered agent of a limited liability company is valid service upon the company. See RCW 25.15.025(1) ("A limited liability company's registered agent is its agent for service of process, notice, or demand required or permitted by law to be served on the limited liability company."). Junior contends he was not Kuleana's registered agent. Junior and Senior both testified that the secretary of state document identifying the registered agent as "Harold Johnson" at the Puyallup address actually referred to Senior, not Junior.
¶ 45 Junior testified that the Puyallup address was the address of his company, Northwest Infrastructure. He claimed that he hired Diversified on behalf of Northwest Infrastructure, not on behalf of the owner. But he admitted he had never told Diversified anything about Northwest Infrastructure or about Kuleana.[27] "They simply never asked."[28] Upon being shown the document listing "Harold Johnson" as the registered agent of Kuleana at the Puyallup address, Junior asserted that the Harold Johnson referred to therein was his father:
Q. And the address is [Puyallup address on 23rd Street Southeast]. Do you see that, sir?
A. Yes.
Q. That's you, isn't it?
A. No, sir.
Q. Who is that?
A. That's my father.
Q. I see.
¶ 46 The trial court questioned Junior on this point:
THE COURT: And we would know that because?
THE WITNESS: Well  if there was a title search, then it would show the difference in identity.
THE COURT: How?
THE WITNESS: Well, his Social Security number is different.
THE COURT: Where's the Social Security number on there?

*303 THE WITNESS: Well, this is just something that we provided, as they asked who owned the property. It looks like we downloaded this to give them the information.
THE COURT: But you just testified that Harold Johnson is you, at [Puyallup address on 23rd Street Southeast]. That's your company.
THE WITNESS: No, Northwest Infrastructure, I own it.
My father 
THE COURT: How would somebody looking at a record be able to tell the difference between you, or your father, or who in the heck they're dealing with?
THE WITNESS: If they were, if they were looking at a record that they got from the county, or wherever, the deed, it would show a difference in spelling of the middle name, perhaps. The Social Security number is different.
THE COURT: And if the document did not have a Social Security number on it, it only had a middle initial, that you and your father share same middle initial 
THE WITNESS: That's correct, sir.
THE COURT:  how would anyone know who they're dealing with, whether it was you or your dad?
THE WITNESS: I imagine they'd have to ask.[[29]]
¶ 47 When Senior testified, the court prompted counsel to ask him to state his address and he responded with an address in Valley Center, California. He testified that he was the registered agent for Kuleana and that he used the Puyallup address, his son's office address, as a matter of convenience. He testified that he also had a Washington State residence, a town house "approximately a block away from the office."[30] The court asked Senior for his address at the town house. He answered, "I am sorry, I don't know it."[31]
¶ 48 In an oral ruling at the end of trial, the trial court summed up the evidence concerning the issue of service upon the owner:
I have two law students observing this case. And if I were to write a bar exam question that said that the owner's name was Harold Johnson, and the contractor's name was his son, Harold Johnson, I think people would laugh at me and say this is such a disingenuous question it would never happen in real life. But that is exactly what we have. We have two Harold Johnsons. Counsel referred to them as senior and junior throughout the argument. Apparently they had never ever, themselves, used senior and junior. The difference is one says, well, I'm Harold and my son goes by Hal, the nickname. But the nickname, Hal, could apply to either one. Then they say, well, no, if you'd have just asked, we'd have told you.
. . . .
. . . They are father and son and share the exact same name. And apparently even share the exact same address for business purposes. Which happens to be the address of the general contracting business in Puyallup. But you see, the true owner, Harold, lives in a townhouse nearby, but "I don't know the address." So, it's the son's address.
Fact: We don't have the property owner in this suit.
. . . .
Fact: There are two Harold Johnsons. One is a father, one is a son. They are not designated as senior and junior. And no one would know which is which.
Fact: They both use the same address.
Fact: Harold Johnson at the [23rd Street Southeast] address in Puyallup is the registered agent for Kuleana, LLC.
Fact: Harold Johnson is validly served with process of service.

*304 Fact: The work was performed according to the contract signed by Harold Johnson.
Fact: The lien is foreclosable.
Thank you.[[32]]
¶ 49 The written findings and conclusions are largely consistent with the oral ruling. A significant difference is that the written findings do not include the oral finding, "we don't have the property owner in this suit." Because written findings control over oral findings, the issue as to whether the property owner was "in this suit" remains open. With that exception, we adopt the reasoning of the trial court as reflected in the written and oral findings quoted above and conclude they are sufficient to support the conclusion that Diversified served the record owner of the subject property.
¶ 50 To begin, the trial court found that Diversified served Junior. "The defendant was served with the Complaint at his personal residence on June 11, 2007.[The] defendant's father, also Harold Johnson, was never served with the Complaint."[33] While information that came to light afterwards may tend to suggest that the Harold Johnson named in the deed from McGarvey was Senior rather than Junior, Diversified could not have discerned from the public record that such was the case at the time of recording the lien claim or at the time of filing the foreclosure action. It is true that Diversified included "Jane Doe Johnson" in the caption even though the McGarvey deed refers to "Harold Johnson, a single man," but this does not mean Diversified knew it was suing someone other than the Harold Johnson in the McGarvey deed, and neither does the fact that Diversified sued "Harold Johnson, also known as Hal Johnson." Diversified was not obligated to search for marriage certificates or investigate nicknames. So far as the public record disclosed, McGarvey deeded the property to "Harold Johnson" whose address was in Puyallup. Diversified served a Harold Johnson who had that address.
¶ 51 In this respect, the facts are unlike in Schumacher, where the claimant served First Union Management, a management company, but did not serve the record owner, First Union Real Estate Equity and Mortgage Trust. The names there were similar but not identical. It is unlikely Schumacher would have come out the same way if both the management company and the record owner, though formed as distinct entities at different times, had both been named "First Union Management." Here, the older and younger Harold Johnson merged their identities for practical purposes by using the identical name and the identical address for their business dealings. When the record owner of a parcel of property has exactly the same name and address as another entity, and the owner entrusts the hiring of contractors to the identically named entity, and that identically named entity: (1) holds itself out as the owner of the property, (2) requests the contractor's work on the property, and (3) does not inform the contractor about who the actual owner is, the contractor cannot reasonably be expected to distinguish between them for purposes of RCW 60.04.141.[34] To hold otherwise would create a recipe for obfuscation and artifice that could be intentionally employed by property owners who seek to be insulated from construction liens.
¶ 52 Over the course of the trial, Judge Austin developed the perception that the two Harold Johnsons were intentionally manipulating their identities. In denying Senior's postjudgment motion to intervene, he commented, "One of my impressions at trial was that Harold Johnson and Harold Johnson have used that dual persona quite to their advantage, probably more than just this *305 time. . . . I found it preposterous, what their explanations were. Preposterous."
¶ 53 Because the two Harold Johnsons effectively held themselves out as the same person without making it possible for Diversified to distinguish between them at the time of recording the lien and filing suit, the trial court legitimately treated them as the same person for purposes of deciding whether Diversified complied with statutory requirements. Thus, if Harold Johnson was the record owner of the property when Diversified initiated the action, Diversified satisfied the service requirement by serving Harold Johnson.
¶ 54 Junior argues, however, that the record owner who had to be served to satisfy RCW 60.04.141 was actually Kuleana.
¶ 55 The deed from Harold Johnson to Kuleana was recorded on February 2, 2007. Diversified's title investigation occurred on February 7 and 13, 2007. Evidence of Kuleana's recorded deed did not turn up in the materials Diversified obtained from the assessor's office and a title company. We note that the legal description in the claim of lien is not the same as the legal description in the Kuleana deed. The parties did not address the discrepancy at trial, and they do not do so in this appeal. Junior and Senior testified generally to the effect that Senior wanted to develop only 60 acres of the land he purchased from McGarvey and then retire on the rest.[35] On appeal, Junior asserts that the present dispute concerns only the 60 acres included in the development project.[36] He is incorrect. The findings entered by the trial court distinguish between "the Property" and "the Project":
In or around April of 2006, defendant Harold Johnson commenced a planned unit development known as the River Ranch on the Little Spokane (hereinafter "Project") on certain real property located in Spokane County, Washington (hereinafter "Property").[[37]]
The present dispute is not concerned only with the acreage within the planned unit development project. The present dispute concerns parcel no. 38345.9036, the property that was identified and described in the Claim of Lien and represented in the assessor's records to be 222.7 acres.
¶ 56 The map in plaintiff's exhibit 7 depicts parcel no. 38345.9036 as a large, roughly trapezoidal parcel with a river running through it. The other two smaller parcels identified on the face of the McGarvey deed are adjacent.
¶ 57 Diversified performed all of its work in 2006 before any property was conveyed to Kuleana. Therefore, its work improved all three parcels owned at that time by Harold Johnson, or at a minimum the large parcel of 222.7 acres designated in the claim of lien. If the deed from Harold Johnson to Kuleana describes less than all of that parcel  a theory not pursued at trial  then when Diversified filed the foreclosure action on May 16, 2007, Harold Johnson remained a record owner of at least part of the parcel that Diversified improved and subjected to the lien. If so, then Diversified's service on "a Harold Johnson" satisfied the statutory requirement of service upon the owner.
¶ 58 On the other hand, if (as Junior argued at trial) the deed from Harold Johnson to Kuleana describes all of the parcel Diversified designated in the claim of lien such that Kuleana was the record owner of all of it as of February 2, 2007, the question is whether Diversified's service on "a Harold Johnson" was service on Kuleana.
¶ 59 The trial court found that Harold Johnson at the Puyallup address was Kuleana's registered agent. The public record at the time of service provided no way to determine whether the registered agent was Junior or Senior. The Puyallup address is the office address of Harold Johnson Junior, and according to Senior's testimony he sometimes uses the same address. Under these unique circumstances, we conclude that for purposes of RCW 60.04.141, service upon Junior was service upon Kuleana's registered agent. If Kuleana was the owner, Diversified's service *306 on "a Harold Johnson" satisfied the statutory requirement of service upon the owner.
¶ 60 In summary, so far as Diversified could have discerned from the public record, the record owner of the liened parcel at all pertinent times was either Harold Johnson or Kuleana. By serving the complaint on a Harold Johnson, Diversified made satisfactory service on both of the two possible record owners and thereby prevented expiration of the lien. The trial court did not err in concluding that Diversified satisfied the requirements of RCW 60.04.141.

THE OWNER NEED NOT BE JOINED AS A PARTY TO AVOID DISMISSAL OF THE ACTION
¶ 61 The only defendant named in the foreclosure action was "Harold Johnson, also known as Hal Johnson and Jane Doe Johnson, husband and wife." Kuleana was served through its registered agent as described above, but it was not named as a defendant. RCW 60.04.171 states in part that in any action brought to foreclose a lien, "the owner shall be joined as a party." Junior contends that Kuleana was an owner and was not joined and therefore under RCW 60.04.171 the lien expired and the action must be dismissed.
¶ 62 As discussed above, the record owner of the property when Diversified initiated the foreclosure action was either Harold Johnson or Kuleana or both. For the sake of this argument, we accept Junior's premise that Kuleana was the only record owner and was not joined. We reject his argument that dismissal of the action is mandatory where the owner is not joined as a party. Our decision is compelled by reading RCW 60.04.171 together with RCW 60.04.141.
¶ 63 The meaning of a statute is a question of law that we review de novo. The primary objective in statutory interpretation is to ascertain and give effect to the intent of the legislature. In interpreting a statute, we examine its language as well as that of closely related statutes in light of the legislative purpose. If the statute is unambiguous, we must give effect to its plain meaning as an expression of legislative intent. The court should assume that the legislature means exactly what it says. Plain words do not require construction. Van Wolvelaere v. Weathervane Window Co., 143 Wash.App. 400, 405, 177 P.3d 750 (2008).
¶ 64 The critical section of the statute for avoiding dismissal of a foreclosure action is RCW 60.04.141. Pacific Erectors discusses the history of a predecessor statute, former RCW 60.04.100 (1975). Pac. Erectors, 62 Wash.App. at 163-65, 813 P.2d 1243. As summarized there, the Supreme Court overruled its prior case law in 1974 and held that the then eight month statutory period to accomplish both filing and service could be tolled so long as either filing or service occurred within eight months. Curtis Lumber Co. v. Sortor, 83 Wash.2d 764, 522 P.2d 822 (1974). The Curtis decision "rests on the premise that procedural terms should be construed consistent with the rules of civil procedure. See CR 81(a)." Pac. Erectors, 62 Wash.App. at 164, 813 P.2d 1243. The legislature responded in 1975 by amending former RCW 60.04.100 to allow 90 days after filing to serve necessary parties. Accordingly, it is now clear that the holding of Curtis, that a lien foreclosure action is not a special proceeding within the scope of CR 81, is no longer applicable. The specific statutory rules for filing and service must be followed in order to prevent expiration of a lien. Pac. Erectors, 62 Wash.App. at 165, 813 P.2d 1243, citing Queen Anne Painting, 57 Wash. App. at 395, 788 P.2d 580.
¶ 65 The holding of Pacific Erectors that the statutory deadlines for filing and service must be met to avoid expiration of a lien remains good law even though the section therein interpreted, former RCW 60.04.100, has since been repealed in a comprehensive revision of the entire construction lien statute, chapter 60.04 RCW. See LAWS OF 1991, ch. 281; LAWS OF 1992, ch. 126.[38] We therefore *307 look strictly to the statute to determine what a claimant must do to avoid expiration of a lien.
¶ 66 RCW 60.04.141 is the current deadline-setting section enacted to replace former RCW 60.04.100. Like its predecessor, it sets forth a special eight month period of limitation, beyond which a foreclosure action may not be maintained unless the claimant has satisfied certain procedural requirements:
No lien created by this chapter binds the property subject to the lien for a longer period than eight calendar months after the claim of lien has been recorded unless an action is filed by the lien claimant within that time in the superior court in the county where the subject property is located to enforce the lien, and service is made upon the owner of the subject property within ninety days of the date of filing the action; or, if credit is given and the terms thereof are stated in the claim of lien, then eight calendar months after the expiration of such credit; and in case the action is not prosecuted to judgment within two years after the commencement thereof, the court, in its discretion, may dismiss the action for want of prosecution, and the dismissal of the action or a judgment rendered thereon that no lien exists shall constitute a cancellation of the lien. This is a period of limitation, which shall be tolled by the filing of any petition seeking protection under Title Eleven, United States Code by an owner of any property subject to the lien established by this chapter.
RCW 60.04.141. Unlike its predecessor, RCW 60.04.141 does not require filing of both the summons and complaint and service on all "necessary parties." What is now required is service upon the owner within 90 days after filing the action. This is "a clarification and simplification of requirements under the prior act." 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES-DEBTORS' RELIEF § 4.71 at 368 n. 1. To the extent that the former statute's reference to "necessary parties" might support an inference that joinder of the owner as a named party is required to support a foreclosure action, such an inference is no longer available, as RCW 60.04.141 makes no reference at all to "parties."
¶ 67 To prevent expiration of a valid lien, the lien claimant must (1) file a lawsuit within 8 months of recording the lien and (2) make service upon the owner within 90 days of filing suit. Diversified complied with both of these mandates. Nothing in the plain language of RCW 60.04.141 indicates that a lien will expire unless the owner is joined as a party.
¶ 68 To argue Diversified's action must be dismissed because Kuleana was not joined, Junior relies on a different section of the statute, RCW 60.04.171:
The lien provided by this chapter, for which claims of lien have been recorded, may be foreclosed and enforced by a civil action in the court having jurisdiction in the manner prescribed for the judicial foreclosure of a mortgage. The court shall have the power to order the sale of the property. In any action brought to foreclose a lien, the owner shall be joined as a party. The interest in the real property of any person who, prior to the commencement of the action, has a recorded interest in the property, or any part thereof, shall not be foreclosed or affected unless they are joined as a party.
A person shall not begin an action to foreclose a lien upon any property while a prior action begun to foreclose another lien on the same property is pending, but if not made a party plaintiff or defendant to the prior action, he or she may apply to the court to be joined as a party thereto, and his or her lien may be foreclosed in the same action. The filing of such application shall toll the running of the period of limitation established by RCW 60.04.141 until disposition of the application or other time set by the court. The court shall grant the application for joinder unless to do so would create an undue delay or cause hardship which cannot be cured by the imposition of costs or other conditions as the court deems just. If a lien foreclosure action is filed during the pendency of another such action, the court may, on its *308 own motion or the motion of any party, consolidate actions upon such terms and conditions as the court deems just, unless to do so would create an undue delay or cause hardship which cannot be cured by the imposition of costs or other conditions. If consolidation of actions is not permissible under this section, the lien foreclosure action filed during the pendency of another such action shall not be dismissed if the filing was the result of mistake, inadvertence, surprise, excusable neglect, or irregularity. An action to foreclose a lien shall not be dismissed at the instance of a plaintiff therein to the prejudice of another party to the suit who claims a lien.
RCW 60.04.171.
¶ 69 Unlike RCW 60.04.141, RCW 60.04.171 does not create a deadline for action beyond which a lien will expire. RCW 60.04.171 sets forth the rules for joinder of parties and consolidation of actions once an action has been timely commenced and notice timely served upon the owner.
¶ 70 In any lien foreclosure action, the owner "shall be joined" as a party. In view of the use of the passive voice, we do not share Junior's view that the statute imposes upon the plaintiff a mandatory obligation to "join" the owner or else suffer dismissal. Rather, we read RCW 60.04.171 as giving direction to a trial court when faced with an assembly of persons having interests in the same property, some of them attempting to foreclose on liens and others attempting to stave off foreclosure. The "owner" is the only entity whose joinder the court must permit in any lien foreclosure action. The rest of the statute gives the court some latitude in deciding whether and when to allow joinder of other persons who claim a lien against or an interest in the same property. Obviously it is in the plaintiff's interest to see that the owner is joined because of the risk of coming up empty-handed. But if the legislature had intended to make joinder of the owner essential to the action in the same way that service upon the owner is essential, the requirement would have been placed in RCW 60.04.141.
¶ 71 Nothing in the plain language of RCW 60.04.171 indicates that a lien will expire unless the owner is joined as a party. The statute states, "The interest in the real property of any person who, prior to the commencement of the action, has a recorded interest in the property, or any part thereof, shall not be foreclosed or affected unless they are joined as a party." Thus, if the owner or anyone else with a recorded interest in the property is not made a party, the consequence is that his or her interest will not be foreclosed or affected. See 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES-DEBTORS' RELIEF § 4.71 at 369.
¶ 72 The issue presented in this appeal is whether a foreclosure action and judgment must be dismissed where the owner is not joined as a party. We conclude the answer is no. Assuming Kuleana was the owner who should have been joined under RCW 60.04.171, nonjoinder of Kuleana would not require the trial court to dismiss the foreclosure action. The critical requirement was to serve Kuleana as required by RCW 60.04.141. That requirement was satisfied.

ATTORNEY FEES
¶ 73 The lien claim statute authorizes attorney fees to the prevailing party in the action "as the court or arbitrator deems reasonable." RCW 60.04.181. This court reviews the award of attorney fees under the lien claim statute for an abuse of discretion. DKS Constr. Mgmt., Inc. v. Real Estate Improvement Co., LLC, 124 Wash. App. 532, 538, 102 P.3d 170 (2004), review denied, 154 Wash.2d 1027, 120 P.3d 73 (2005).
¶ 74 The trial court awarded attorney fees and costs to Diversified in the amount of $55,285.44.[39] Junior contends the award is excessive. He complains the court ignored the extensive analysis he submitted when he advocated reducing the award by almost $20,000.00. But the fact that the trial court *309 refused to reduce the award does not mean the court ignored Junior's briefing. Diversified submitted materials indicating that a large amount of fees incurred was attributable to delays on the part of Junior. For example, Junior was uncooperative in discovery, canceled his deposition at the last minute, and filed an untimely motion for summary judgment.
¶ 75 Junior does not point out any particular item in the award that we should regard as unreasonable. In a footnote, he attempts to "incorporate" into his appellate brief some 22 pages of argument made in the trial court. We do not permit litigants to use incorporation by reference as a means to argue on appeal or to escape the page limits for briefs set forth in RAP 10.4(b). Kaplan v. Nw. Mut. Life Ins. Co., 115 Wash.App. 791, 801 n. 5, 65 P.3d 16 (2003). review denied, 151 Wash.2d 1037, 95 P.3d 351 (2004). Junior has failed to demonstrate any basis for reversing the award of fees and costs in the trial court. We affirm it.

MOTION TO SUPPLEMENT RECORD
¶ 76 Diversified filed a motion in this court to supplement the appellate record with materials submitted to the trial court in connection with an attorney's lien filed against appellant by his trial counsel. Arguably, supplementation is allowable under RAP 9.10, but only if this court concludes the existing record "is not sufficiently complete to permit a decision on the merits of the issues presented for review." The materials were not before the trial court at the time of the trial. They were not generated until two years later. We do not deem these materials necessary to reach a decision on the merits of the trial rulings at issue in this appeal. The motion to supplement is denied.
¶ 77 Affirmed. As the prevailing party on appeal, Diversified is entitled to an award of attorney fees under RCW 60.04.181.
WE CONCUR: LAU and SCHINDLER, JJ.
NOTES
[1] Exhibit P1.
[2] Exhibits P2 and P3.
[3] Report of Proceedings at 103, 110-11, 116, 131.
[4] Clerk's Papers at 391-93 (Judgment and Decree Foreclosing Claim of Lien).
[5] Report of Proceedings at 91.
[6] Report of Proceedings at 130-33.
[7] Clerk's Papers at 385.
[8] Clerk's Papers at 385.
[9] Clerk's Papers at 385-86.
[10] Exhibit P1.
[11] Clerk's Papers at 385.
[12] Report of Proceedings at 130-31 (Junior saying Diversified never came back to "finish the job").
[13] Report of Proceedings at 91.
[14] Report of Proceedings at 103.
[15] Exhibit P7.
[16] Exhibit P8.
[17] Exhibit P8 at 3.
[18] Exhibit P9 (Claim of Lien).
[19] Clerk's Papers at 147.
[20] Clerk's Papers at 149.
[21] Clerk's Papers at 250-52.
[22] Exhibit D-104.
[23] See Report of Proceedings at 210, 234-36, 262-68.
[24] 27 Marjorie Dick Rombauer, Washington Practice: Creditors' Remedies-Debtors' Relief § 4.52 at 347 n. 1. "This conclusion is based on the legislature's removal of a broader definition of `owner' included in the 1991 revision, Laws of 1991 ch. 281, § 1(9), by deletion in the 1991 amendments, Laws of 1992 ch. 126, § 1(9). The deleted definition provided that `owner' included the record holder of either the legal or beneficial title."
[25] Clerk's Papers at 386-87.
[26] Clerk's Papers at 388.
[27] Report of Proceedings at 102-112. Parenthetically, we address a specific finding of the trial court to which Junior has assigned error. The trial court found: "Defendant Johnson's contention that the real property is actually owned by his father is not well taken. Even assuming that that were true, defendant Johnson was an agent and subcontractor of his father, Harold Johnson, and was intimately involved with his father in the development of this property, and therefore was fully able to bind the actual owner of the property." Clerk's Papers at 386.

Junior argues that the trial court used this finding to support a conclusion that Junior was fully able to bind Senior's ownership interest. He is mistaken. The trial court struck the proposed language to that effect. Rather, the finding that Junior was an agent and subcontractor of his father responds to Junior's testimony that he, not the owner, hired Diversified. Report of Proceedings at 102-112. The finding is relevant to RCW 60.04.051, which states in pertinent part that a parcel of land which is improved "is subject to a lien to the extent of the interest of the owner at whose instance, directly or through a common law or construction agent the labor, professional services, equipment, or materials were furnished, as the court deems appropriate for satisfaction of the lien." (Emphasis added.) The finding establishes that Junior was an agent, such that his hiring of Diversified was done at the instance of the owner. Junior's appeal does not address RCW 60.04.051.
[28] Report of Proceedings at 111.
[29] Report of Proceedings at 113-15.
[30] Report of Proceedings at 214.
[31] Report of Proceedings at 215. Adding to the confusion, the record also contains the owner/contractor agreement between Senior and Northwest Infrastructure. Owner Harold Johnson's address is given as the Tacoma address on Viewpoint Circle Northeast, elsewhere represented to be Junior's personal residence. Defendant's Exhibit 105.
[32] Report of Proceedings at 269-71.
[33] Clerk's Papers at 387.
[34] At oral argument in this court, counsel for Diversified brought up RCW 60.04.230. This section of the statute requires the prime contractor for any construction project costing more than five thousand dollars to post a legible notice at the construction site containing, among other items of information, the legal description or tax parcel number of the property and the name, address, and phone number of the property owner. Because the first mention of RCW 60.04.230 was not until oral argument in this court, we do not discuss it or rely on it.
[35] See, e.g., Report of Proceedings at 131, 203, 217.
[36] Brief of Appellant at 7.
[37] Clerk's Papers at 384 (findings).
[38] Decisions under prior versions of the statute "should be relied on only after careful comparison of the statute under which the court was deciding and the language of the equivalent, if any, in the 1991 revisions. In several instances, prior case law is overridden by the revision; some older cases were overridden by former revisions of the 1893 statute." 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES-DEBTORS' RELIEF § 4.51 at 347.
[39] It appears the trial court awarded two different amounts for attorney fees and costs. See Clerk's Papers at 392. The parties do not address the discrepancy, and we likewise do not address it.