IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF | ) | No. 37555-2-III |
| | ) | |
| | ) | |
| | ) | |
| BERT S. STENNES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Deceased. | ) | |

LAWRENCE-BERREY, J. — Attorney Alex Thomason, his wife, and his sole proprietorship appeal after the trial court ordered him and his attorneys to pay attorney fees under CR 11, the court's inherent power, and RCW 11.96A.150. Alex[1] argues the court erred in imposing CR 11 sanctions and its reasons for imposing those sanctions are not factually supported.

We conclude that substantial evidence supports the trial court's view that Alex violated attorney-client privilege by filing over 600 pages of irrelevant and confidential papers in this estate litigation. The papers pertained to a divorce case where Alex, years earlier, represented one of the estate beneficiaries. This wrong precipitated substantial

---

[1] Because several people in this case share a common last name, the parties on appeal chose to use first names in their briefs. We continue this practice.

motion practice. The court entered the sanctions award as a deterrent to future abuses. In doing so, it did not violate its wide discretion under RCW 11.96A.150.

We affirm the orders of the trial court.

FACTS

*Background facts*

Bert Stennes and Evelyn Stennes were married for 60 years and had three children—Eric Stennes, Shannon Maitland, and Mike Stennes. Evelyn died in 2009 and Bert was appointed as her personal representative (PR). Evelyn's "Last Will and Testament" (Evelyn's Will) required her estate to fund a trust for the benefit of her children. Bert failed to do this.

In 2012, Mike (Bert's son) hired Alex to represent him in his divorce, which was later abandoned. Alex also served as Mike's attorney in matters related to his position as manager for Bert's business operations.

In 2013, Alex and Mike entered into an orchard lease agreement. Alex sent a letter to Mike quoting a portion of the Washington Rules of Professional Conduct (RPC) 1.8. The letter stated that Alex was currently representing Mike in a different transaction and recommended that Mike independently consult with a lawyer.

Also in 2013, Alex purchased real estate in Pateros, Washington. Alex partially financed the purchase with a $390,000 personal loan from Bert. Bert entered into a 10-year agricultural lease of a portion of the land, and Alex executed a "Land and Loan Agreement." Alex sent a letter to Bert explaining that he had been representing Mike and referred again to RPC 1.8. Alex and Bert amended their agreement in 2015. The next year, Bert forgave the loan.

Alex and Bert lived next door to one another from 2013 until Bert's death in 2017. According to Alex, they developed a close friendship, celebrated birthdays and holidays together, and had dinner together many times per week. This relationship—given Alex's role as Bert's attorney at the end of his life and their business transactions—has been a concern for Bert's heirs and underlies much of this litigation.

Bert's "Last Will and Testament" (Bert's Will), executed on November 16, 2016, provided in relevant part:

### ARTICLE VII. TERMINATION OF BUSINESS TRANSACTIONS WITH ALEX THOMASON

By gift, or by cancellation of indebtedness, or by any other means necessary, I intend to terminate prior to my death my business transactions with my attorney, friend and neighbor, ALEX THOMASON. My business transactions with ALEX THOMASON are currently summarized by that certain Agreement to Amend Promissory Note and Joint Operating Agreement entered into . . . on May 8, 2015 (the "Agreement"). The Agreement references required payments to me from ALEX THOMASON

3

that are scheduled to expire 30 months after May 8, 2015. It is my intent to cancel and forgive said payments at the time of execution of this my Last Will and Testament. Some of these business transactions may nonetheless by in existence at the time of my death. If at the time of my death I am engaged in any oral or written leases, contractual or business relationships . . . with ALEX THOMASON, I hereby give, devise, bequeath and release any and all of my interest and the interest of my estate in said Business Transactions to ALEX THOMASON. It is my intent that my interest and the interest of my estate in said Business Transactions includes, but is not limited to, any property conveyed by exercise of my power of appointment . . . . In the event [any potential beneficiary of my estate] files a lawsuit or other complaint against ALEX THOMASON related to said Business Transactions, I direct my Personal Representative and Trustee to indemnify and defend ALEX THOMASON from any such claim. I hereby direct that the costs of such indemnification and defense shall be charged against and paid from the share of the Stennes Family Trust allocated to such beneficiary who files . . . such lawsuit or complaint.

Clerk's Papers (CP) at 10-11.

Bert's Will further provided:

### ARTICLE XI. STATEMENT OF INTENT

B. It is further my intent that my attorney, friend and neighbor, ALEX THOMASON, be released from any and all business transactions with me and my estate including, but not limited to, any contractual and business obligations to me and my estate upon my death, and that he be fully protected from any claims regarding our joint business transactions. I view Alex Thomason as my spiritual son and expect all of my heirs and beneficiaries to treat him as such and not bring any claim or complaint against him or his family. I entered into agreements with Alex Thomason as part of my ministry and with the faith Alex will further promote our joint goal of advancing the Christian Gospel message.

CP at 16-17.

Bert's Will appointed Cody Gunn as PR.  Mr. Gunn is Alex's brother-in-law, friend, and business partner.  Mr. Gunn was also designated successor PR for Evelyn's estate after Bert's death.

Bert died in August 2017 at the age of 93.

*Trial court proceedings*

On September 7, 2017, Bert's Will was admitted to probate in Chelan County Superior Court.  In June 2018, Mr. Gunn filed his resignation as PR for both Evelyn's estate and Bert's estate.  In August 2018, Daniel Appel replaced Mr. Gunn as successor PR for Bert's estate, and Roberto Castro replaced Mr. Gunn as successor PR for Evelyn's estate.

Evelynn's estate had a potential claim against Bert's estate for Bert's failure to fund the trust for their children.  Mr. Appel sought to resolve this claim.  On January 15, 2019, Mr. Appel filed a notice of mediation pursuant to RCW 11.96A.300(1)(a).  The notice was sent to Mike's attorneys, Eric's attorneys, Shannon, Alex, Mr. Gunn, and Mr. Castro.  Mr. Appel proposed a mediation date of March 27, 2019.

On February 19, 2019, Alex filed a notice of appearance in Bert's estate

proceedings, as well as a notice of appearance in Evelyn's estate proceedings. Alex was

not a beneficiary of either estate nor did he have a creditor's claim.

On March 22, 2019, Eric Stennes moved for an order directing discovery and

requesting the court order Mr. Appel to disclose files related to Bert's business dealings

in the final years of his life. Mike supported Eric's motion. A hearing on the motion was

scheduled, but Alex did not attend.

On May 17, 2019, the trial court granted Eric's motion for discovery. The order

stated, in part:

> 1.      The Court finds that good cause exists to permit discovery
> pursuant to RCW 11.96A.15(2)[2] . . . ;
> 2.      Daniel Appel, Personal Representative of the Estate of Bert
> Stennes shall produce all files in his possession and in the possession of his
> former attorneys . . . related to Bert Stennes [and] to Roberto Castro,
> Personal Representative of the Estate of Evelyn Stennes;
> 3.      Daniel Appel . . . is instructed to (1) fully cooperate with
> Roberto Castro . . ., (2) waive any privilege he may hold with respect to [the
> requested files.] The court finds that Bert Stennes' heirs have waived Bert
> Stennes' privileges.
> 4.      If a professional who worked for Bert Stennes receives a
> request for his or her files from Mr. Castro, . . . the complete files must be
> produced within 10 days or the professional receiving the request must file
> a motion with the court within 10 days objecting on any ground, not
> including privilege which has been waived. . . .
>         . . . .

---

[2] This is a typographical error. Discovery is permitted under RCW 11.96A.115.

6.      All disclosed documents shall be distributed to everyone who has appeared in this case.  [*H*]*owever they shall <u>not</u> be disclosed to Mr. Alex Thomason or his attorneys until further order of this Court.*  Mr. Gunn will not provide them to anyone else.

CP at 2550-54 (some emphasis added).

On August 12, 2019, Mike petitioned to remove Mr. Appel as PR.  The petition claimed Mr. Appel—who is Alex's close friend—was not acting on behalf of Bert's estate as evidenced by his failure to investigate potential claims against Alex.  The petition detailed factual allegations underlying claims of undue influence, abuse of a vulnerable adult, and violation of attorney-client privilege.

On September 6, 2019, Alex moved for relief from the May 2019 order and asserted he should have access to the files of Bert's attorneys.  He argued he was unable to respond to Mike's petition for removal of Mr. Appeal as PR without the discovery afforded to other beneficiaries.  He further argued the language in the order excluding him was irregular, handwritten, and not requested by the parties.

Alex consulted with an ethics expert, Professor John Strait.  Professor Strait filed a declaration opining that Mike waived his attorney-client privilege by asserting allegations against Alex.  Alex denied Mike's claims against him and asserted they were brought to distract and conceal Mike's own wrongdoing with respect to Bert's business transactions.  Alex then submitted a declaration that attached over 600 pages of documents, including

receipts, bank records, and check images that he reviewed as Mike's divorce attorney. Although these documents are not in the appellate record, we infer they were submitted to encourage Bert's estate to bring a claim against Mike.

On September 11, 2019, Mike objected to Alex's motion for relief and requested a protective order for his confidential documents. Mike reiterated that he did not waive his attorney-client privilege with respect to Alex's representation of him during his 2012 divorce. He also questioned Professor Strait's ethics opinion because it was unclear what documents were reviewed and what information Professor Strait learned about the proceedings. For this same reason, the trial court discounted Professor Strait's opinion.

After a hearing on September 26, 2019, the court granted Mike's motion to remove Mr. Appel as PR for Bert's estate. The court found Mr. Appel was Alex's friend and could have been preferring or protecting him in the proceedings. It also found that Alex did not having standing in the matter because he was not presently a party pursuant to the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. The court reserved the parties' request for fees against Alex.

*Okanogan County proceedings*[3]

In September 2018, Alex moved for a civil anti-harassment order in Okanogan County Superior Court against Mike and his wife. This order was sought during the pendency of the Chelan County probate proceeding where Alex and Mike had adverse interests. Although Mike denied the allegations, he agreed to the restraints to avoid further inflammation.

In April 2019, Alex moved the Okanogan court to find Mike in contempt of the agreed protective order. During the hearing, it appears that the court was considering whether to transfer the case to Chelan County so one court could resolve both the estate and the harassment issues. In addressing the court's question about Alex's status in the estate litigation, Alex's counsel said, "There is a Chelan County estate case. [Alex] is not a party. There's been multiple allegations made against [Alex]. He has not been added to it. He's not had an opportunity to respond." CP at 1433-34. Mike's attorney disagreed.

---

[3] This court denied Alex's motion to supplement the record with the Okanogan County findings of fact, conclusions of law, and order denying contempt motions (filed July 23, 2021). We did so because the existing record is sufficient to resolve the issues on appeal.

CP at 1434. Later in the hearing, the following exchange took place:

> THE COURT: Okay. And the probate was filed clear back in '17 and so this process is ongoing? Is there litigation in Chelan County, do you know?
> [ALEX]: There is litigation in Chelan County.
> THE COURT: Are you a party on that litigation at all?
> [ALEX]: *No. When you say as a party under RCW 11.96, the answer is no.* But I believe at some point we may become interested. I don't know. I don't know how to answer that.
> [MIKE'S COUNSEL]: *Your Honor, he entered a notice of appearance through counsel.*
> . . . .
> *. . . In both matters.*
> [ALEX'S COUNSEL]: *That actually doesn't make anyone a party.* But there is a creditor claim that [Alex] did file which has been rejected. So at one point he could be considered a party because of the creditor's claim, so I do want to make sure that the Court understands exactly where that is. But he is not a party at this point because his claim has been rejected. He has not filed suit against either estate, so at the current time, he is not a party.

CP at 1436-37 (emphasis added).

> *Facts underlying this appeal*

On October 14, 2019, Mike moved for an award of attorney fees and to seal documents related to Alex's former representation of Mike. Mike sought fees on three grounds: CR 11, the court's inherent power to sanction Alex, and the equitable fee-shifting provision under TEDRA. Alex did not respond to the motion. Mike's attorney e-mailed Alex's attorney about the nonresponse. The latter wrote back:

10

"The Court has ordered that the Thomasons are not a party and as such lack standing in this matter. Further, the Court found that the Thomasons '. . . are required to answer only discovery that is appropriately directed to them as non-parties.' This is the second email where you have attempted to elicit a response from a non-party to a pleading where only a party may respond. This is in violation of the Court's order. Please abide by the Court's order and treat the Thomasons as non-parties."

CP at 1793 (citation omitted).

Mike's counsel responded: "'This is a very risky approach and you might reconsider.'" CP at 1793.

On October 30, 2019, the trial court heard and orally granted Mike's motion for fees and to seal documents. Alex did not appear at the hearing.

In November 2019, Alex sought discretionary review of the trial court's order granting discovery to Eric. Our commissioner denied the motion, noting that the order at issue only excluded Alex from discovery relative to the petition to remove the PR, and the superior court did not decide whether Alex had standing to seek discovery if Bert's estate refused to release claims against him.

On December 10, 2019, Alex objected to Mike's proposed order on fees and moved for leave to respond. He requested a show cause order, sought permission to respond to the imposition of CR 11 sanctions, and argued he had standing in the matter due to the sanctions.

11

On December 16, 2019, while Alex's motion for discretionary review was still pending, the trial court signed Mike's motion for sanctions and awarded him attorney fees of $41,211.50.

The findings of fact, conclusions of law and order awarding sanctions and sealing documents noted that Alex did not appear. The court's conclusions of law read, in part:

> 3.  This Court concludes that [Alex] violated CR 11 by filing pleadings in violation of CR 11. As set forth in Findings 14 to 37, the <u>Motion for Relief</u> was not well grounded in fact, was not warranted by existing law . . . and was interposed for improper purposes.
> 4.  [Alex and his] attorneys made inconsistent statements to two different courts regarding the [Alex's] standing in this probate. *See* Findings of Facts 14 to 17. These inconsistent positions are the basis for CR 11 sanctions. In addition, attorney fees are properly awarded where a party lacks standing to litigate the matter.
> 5.  [Alex and his] attorneys made misstatements of fact and selectively quoted pleadings in a misleading fashion. Sanctions may be awarded in order "to protect the efficient and orderly administration of the legal process."
> 6.  [Alex and his] attorneys used those misstatements and misleading quotations as a springboard from which to breach Mike Stennes' attorney-client privileges. *See* Findings of Fact 24 to 26. RPC 1.6 makes exceptions when there is a controversy between the attorney and client regarding the attorney's conduct with the client . . . .
> 7.  [Alex] established none of the exceptions to RPC 1.6 or RCW 5.60.060. . . . Therefore there was no legal or ethical basis for [Alex]'s disclosure of materials related to his representation of Mike Stennes. If [Alex] believed that the disclosure was warranted, his duty was to assert, on behalf of Mike Stennes, all nonfrivolous claims that the information sought was protected against disclosure by the attorney-client privilege or other applicable law. RPC 1.6, *Comment* 15. [Alex] did not carry out that duty.

8.      "The privilege is imperative to preserve the sanctity of communications between clients and attorneys."  This Court protects that important principle by sanctioning [Alex] and the attorneys who assisted him in justifying the breach of the duties [Alex] owed to his former client.

9.      This Court also must protect Mike Stennes, at least as much as it can following [Alex]'s illicit disclosures, by ordering that the offending pleadings be sealed and not further referenced by any party. . . .

. . . .

13.      It is appropriate that [Alex and his] attorneys pay Mike Stennes' fees and costs . . . .  Their conduct forced Mike Stennes to rebut frivolous arguments and defend his attorney-client privilege.  This Court expects that the imposition of almost all of Mike Stennes' actual fees as a sanction will deter Alex . . . from again improperly disclosing materials he has obtained from a client as an attorney.  The imposition of fees on [Alex and his] attorneys will both educate them to be forthright and accurate with the courts and punish them for the expense and harassment which they inflicted on Mike Stennes.

. . . .

17.      *The findings of fact and conclusions of law set forth above also support the award of sanctions based on this Court's "inherent power to assess the litigation expenses, including attorney fees, against an attorney for bad faith litigation conduct."*

18.      . . . [Alex and his attorneys] acted in bad faith.

19.      . . . [Alex and his attorneys] distorted the facts in order to violate one of the most sacred duties an attorney owes to his client.

. . . .

21.      Nobody other than [Alex] stood to gain by allowing Alex . . . access to Bert Stennes' other attorneys' files and by delaying the hearing on Mr. Appel's removal.  *Therefore, this Court exercises its discretion to conclude that RCW 11.96A.150 is an independent basis for the award of fees against* [*Alex*].  *This additional basis does not apply to* [*Alex's attorneys*].

. . . .

24.      [Alex] failed to respond to Mike Stennes' Motion for Award of Fees and to Seal Documents, apparently believing that this Court does not have the power to sanction [him] or compel [him] to pay Mike Stennes'

fees and costs. This is incorrect. This Court did not find they are non-parties for all purposes, it held that they "do not currently have standing to receive discovery or to respond to the Petition for Removal." *See*, 10/4/19 Order. Further, this Court reserved the right of the beneficiaries of Bert's Estate to seek fees . . . .

25. Nonparties are subject to attorney fee awards where they attempt to insert themselves into proceedings and an underlying statute or rule provides for fees. [Alex] added significantly to the time and expense that the parties had to incur to manage this probate. [He is] therefore subject to paying the fees and costs caused by [his] unauthorized intervention in these proceedings.

CP at 1796-1801 (some emphasis added) (citations omitted).

On December 26, 2019, Alex moved for reconsideration or for a contested

evidentiary hearing on the issues asserted in Mike's motion for fees and to seal

documents.

On February 27, 2020, the trial court denied Alex's motion to reconsider. The

court explained:

[Alex] filed a motion in the probate matter involving the Estate of Bert Stennes. He did not file a motion to intervene, which probably would have been the proper procedure to follow since he was not a party at that time. The Court . . . remains firm in its conclusion that [Alex] through his counsel made inconsistent statements to the Okanogan County Superior Court and the Chelan County Superior Court as to his role in this proceeding. And in particular, the statements that he made to the Okanogan Superior Court demonstrate to this Court that he clearly recognized that, although he might become a party to this matter in the future if a claim was brought against him, he was not a party at the time he made the statements to the Okanogan County Superior Court. There was nothing that happened in this case that changed this status . . . . That alone, in this Court's view,

14

supports the Court's finding that [Alex] violated CR 11 simply by entering a notice of appearance and filing a motion in this case.

[Alex] was aware of the motion for sanctions and for an award of attorney's fees and chose not to respond to that motion despite being urged to do so on a least two occasions . . . .

The excuse offered by [Alex] in one of his submissions to the court . . . that the judge had barred him from entering the courtroom was wholly without any basis in fact. And, quite frankly, it remains to this Court an incredible assertion by [Alex] that I would, one, actually do that, and two, have any legal authority to bar [Alex] from attending an open court proceeding.

. . . .

. . . The materials submitted for today's motion . . . demonstrate[ ] precisely [Alex]'s understanding of when he could or could not disclose attorney/client privileged information between him and [Mike], and that was if [Mike] sued him, he'd be able to do that. That has not—had not occurred and has not occurred to this point.

So at the time that [Alex] filed his motion and filed all of the confidential attorney/client information, there was no legal controversy existing between Mike Stennes and [Alex].

Based on this set of facts, the court found that [Alex] had violated CR 11 in that the motion and pleadings that he submitted were not well grounded in fact. . . .

. . . .

*It also appears to the Court . . . that* [Alex], *quite frankly, acted in bad faith in connection with the pleadings that he originally filed with the court.*

*Finally, RCW 11.96A.150, it provides an independent basis by which this Court can apportion the payment of attorney's fees in a probate action, and that was also cited as a reason for the Court to require* [Alex] *to pay the fees—most of the fees . . . .* I required the estate to pay some of the fees because I concluded that the estate was benefitted by the actions of Mr. Mike Stennes in resisting [Alex]'s motion.

The—so I am denying the motion to reconsider. There's been a request for fees to be awarded again and another finding of CR 11. I'm not making a CR 11 violation finding today. *However, under*

15

> *RCW 11.96A.150, I'm going to order* [*Alex*] *to pay reasonable attorney's fees for the response to this case not to exceed $10,000.*
>
> *And the reason that I'm doing this is the Court has the discretion first of all, under* [*RCW*] *11.96A, but I'm driven in no small point by* [*Alex*]*'s failure to respond to this motion when it was presented months ago. . . .*

CP at 2394-97 (emphasis added).

On April 21, 2020, the trial court entered an order, which read in part:

> 2.       That [Alex] is ordered to pay Mike Stennes and the Estate of Evelyn Stennes (collectively) $10,000 pursuant to RCW 11.96A.150.
> 3.       This Court made the 12/16/19 award against [Alex] in part as a deterrent and in part to compensate Mike Stennes for the large amount of money he was required to spend to respond to [Alex]'s Motion for Relief from Discovery Order and to Continue Hearing.  To the extent that the 12/16/19 Order does not reflect that point, it is made here.
>            . . . .
> 5.       That the Motion for Sanctions by Mike Stennes and the Estate of Evelyn Stennes is denied.

CP at 2416-17.

*Appellate proceedings*

In May 2020, Alex filed a notice of appeal.[4]  Mike moved to dismiss the appeal,

arguing the orders designated were not appealable under RAP 2.2.

On July 16, 2020, our commissioner denied Mike's motion to dismiss:

> This Court has determined that [Alex]'s appeal of the judgment imposing attorney fees as sanctions against him is an appeal as a matter of right pursuant to RAP 2.2(a)(3). RAP 2.2(d) is not applicable because he is not a party in the underlying action to administer the estate.

Comm'r's Ruling, *In re Estate of Stennes*, No. 37555-2-III, at 2 (Wash. Ct. App. July 16, 2020).

Mike did not move to modify the commissioner's ruling. Instead, months later, he again moved to dismiss the appeal or, in the alternative, strike argument regarding Bert's Will.

Another commissioner of our court denied Mike's second motion to dismiss. She held that Mike's "motion . . . is essentially an untimely and improper motion to modify [the] earlier ruling," and the motion failed to raise new arguments or identify any authority permitting one commissioner to modify the ruling of another commissioner. Comm'r's Ruling, *In re Estate of Stennes*, No. 37555-2-III, at 6 (Wash. Ct. App. Jan. 5, 2021). Regarding the motion to strike, the commissioner held:

> Where [we] previously held that the Findings of Fact, Conclusions of Law, and Order Awarding Sanctions is appealable, and the trial court's imposition of sanctions was based in part on its finding that there was no factual basis for [Alex]'s standing arguments, this Court finds that it is not

---

[4] The notice of appeal, filed May 8, 2020, is not in the clerk's papers. Designated in the notice are the trial court's findings of fact, conclusions of law, and order awarding sanctions from December 16, 2019, the judgment entered on December 16, 2019, and the order on motions to reconsider, to strike, and for sanctions entered on April 21, 2020.

17

> appropriate to strike all of [his] argument on pages 13-20. However, this
> Court will not re-visit the trial court's October 4th Order finding that [Alex]
> lacked standing. This Court's consideration of the standing issue will be
> limited to determining only whether the trial court abused its discretion
> where it found [Alex]'s assertions of standing were made in bad faith.

Comm'r's Ruling, *In re Estate of Stennes*, No. 37555-2-III, at 7-8 (Wash. Ct. App. Jan. 5,

2021). A footnote to the above passage provided:

> Moreover, given all the various instances of misconduct the trial court
> relied on to impose the CR 11 sanctions, the panel of judges assigned to this
> appeal may ultimately determine they do not need to reach the issue of
> whether the trial court abused its discretion by finding [Alex]'s standing
> arguments were made in bad faith to resolve the appeal.

*Id.* at 8 n.1.

## ANALYSIS

FEES AND COSTS AWARDED BY THE TRIAL COURT

Alex argues the trial court erred in awarding CR 11 sanctions against him.

Without assigning error to any of the 48 separate findings of fact, he argues that his

statements to the tribunals in both counties were consistent and his disclosure of over 600

pages of Mike's divorce papers did not violate any ethical duty.

Mike responds that this appeal is moot because Alex failed to assign error to any

of the trial court's findings of fact and because Alex failed to address the trial court's

alternative basis that TEDRA supported an award of attorney fees.

In his reply, Alex argues that the challenges he raised in his opening brief apply equally to TEDRA. We disagree. CR 11 has various procedural and substantive snares that make an award of attorney fees less discretionary than an award under TEDRA.

TEDRA's attorney fee provision provides in relevant part:

> Either the superior court or any court on an appeal may, *in its discretion*, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) *From any party to the proceedings*; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such an amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1) (emphasis added).

Our review of the record convinces us that the acts that precipitated the award of fees and costs were (1) Alex admitting in Okanogan County that his notice of appearance in both estate matters did not make him a party in those matters, but then filing pleadings as if he was a party in those matters, (2) Alex delaying the removal of his friend as PR, even though his friend could not fairly investigate a substantial claim by the estate against him, and (3) Alex's disclosure of over 600 pages from Mike's divorce, none of which addressed whether the estate had a claim against Alex. Substantial evidence in the record supports the trial court's findings that Alex committed these acts.

19

Alex argues that as a matter of law, his disclosure of over 600 pages from Mike's divorce did not violate attorney-client privilege because Mike had asserted claims against him. We only partially agree.

Alex correctly argues he was permitted to defend himself against Mike's serious allegations of undue influence, abuse of a vulnerable adult, and violation of attorney-client privilege. *See* RPC 1.6(b)(5) (To the extent a lawyer "reasonably" believes necessary, the lawyer may reveal protected information to establish a claim or defense in a "controversy" between the lawyer and the client.). But the protected documents submitted by Alex did not establish a claim or defense between Alex and Mike. Rather, the protected documents helped establish a claim by Bert's estate against Mike. Alex's argument to the contrary is disingenuous and contrary to the record before us.[5]

This brings us to the next issue. TEDRA's attorney fee provision does not explicitly permit a court to award attorney fees against a nonparty, such as Alex. We have previously held that an owner of property who unsuccessfully moves to intervene postjudgment in a lien foreclosure action is liable for attorney fees under the mechanic's

---

[5] Alex argues that his disclosures showed that the estate's loss was due to Mike. But it is undisputed that Bert forgave a substantial loan to Alex. Also, Bert's Will reflects that Alex and Bert had other business dealings that, perhaps, need to be investigated. The fact that Bert's estate may have a claim against Mike does not diminish the fact it also may have one or more claims against Alex.

20

and materialmen's lien statute. *Diversified Wood Recycling, Inc. v. Johnson*, 161 Wn. App. 891, 906-07, 251 P.3d 908 (2011). This was our holding even though the mechanic's and materialmen's lien statute seemingly permits an award of fees against a party only. *Id.* at 906. *Diversified Wood Recycling* stands for the proposition that a nonparty who attempts to insert themself into an action is liable for attorney fees awardable under the statute that governs the action. We apply that rule here and hold that the trial court did not abuse its discretion in applying the TEDRA fee statute to Alex, a nonparty.

FEES AND COSTS ON APPEAL

Both Alex and Mike request attorney fees and costs on appeal pursuant to TEDRA and RAP 18.1. We grant Mike's request in part.

RAP 18.1 provides: "If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule . . . ." The applicable law in this case is TEDRA, which authorizes courts to award attorney fees and costs in their discretion.

Mike prevailed on appeal, but the fees and costs he expended in this court on his procedural motions were largely for unsuccessful arguments. Mike recognizes this. In

his brief, he limits his request for fees and costs to those incurred in preparing his brief, in preparing for oral argument, and for attending oral argument. To this extent, we grant his request.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Fearing, J.